# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 19, 2022 Session

## RACHEL REISS ET AL. v. ROCK CREEK CONSTRUCTION, INC.

**Appeal from the Circuit Court for Knox County**
**No. 2-387-20          William T. Ailor, Judge**

_____

**No. E2021-01513-COA-R3-CV**

_____

This appeal involves a counterclaim asserting defamation filed by the original defendant, a construction company, concerning statements that the original plaintiffs/homeowners made online and to third parties that were allegedly damaging to the construction company's reputation. The homeowners sought dismissal of the defamation claims pursuant to Tennessee Code Annotated § 20-17-101, *et seq*., known as the Tennessee Public Participation Act ("TPPA"). The trial court denied the homeowners' motion to dismiss and ultimately entered judgment against them. The homeowners have appealed solely the trial court's denial of their motion to dismiss. Determining that the trial court should have analyzed the motion to dismiss pursuant to the provisions of the TPPA rather than applying a traditional Tennessee Rule of Civil Procedure 12 analysis, we vacate the court's denial of the motion to dismiss and remand for further proceedings. We also vacate the trial court's monetary award to the defendant construction company and remand that issue for further consideration once the motion to dismiss has been properly adjudicated.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Paul E. Tennison, Jake VanAusdall, and Andy Goldstein, Brentwood, Tennessee, for the appellants, Rachel Reiss and Thomas Gomiela.[1]

John B. Dupree, Knoxville, Tennessee, for the appellee, Rock Creek Construction, Inc.

_____

[1] Subsequent to the filing of briefs and presentation of oral arguments in this matter, the appellants' attorneys filed a motion to withdraw from their representation of the appellants on October 13, 2022. This Court granted such motion on October 24, 2022.

**OPINION**

I. Factual and Procedural Background

This action stems from issues that arose during the construction of a residential home in Knox County. The original plaintiff, Rachel Reiss, filed a civil warrant in Knox County General Sessions Court on March 16, 2020, naming Rock Creek Construction, Inc. ("Rock Creek"), as the defendant. In this warrant, Ms. Reiss asserted claims of breach of contract, property damage, and theft against Rock Creek, the building contractor responsible for constructing her home. Ms. Reiss claimed that she had incurred damages in the amount of $25,000.00. Rock Creek filed a counterclaim against Ms. Reiss and her husband, Thomas Gomiela (collectively, "Homeowners"), initiating causes of action of breach of contract, libel, and slander. Regarding the defamation claims, Rock Creek alleged, *inter alia*, that Homeowners had published defamatory statements concerning Rock Creek online and to third parties.

On October 23, 2020, Homeowners' counsel filed a notice of withdrawal from his representation of Homeowners. Rock Creek subsequently filed an application to remove the action to Knox County Circuit Court ("trial court") due to the action's complexity. The certificate of service on this motion reflects that Rock Creek's counsel sent a copy of the motion to Homeowners via the United States Postal Service.

On February 3, 2021, the trial court entered an order, pursuant to Tennessee Rule of Civil Procedure 37.01, compelling Homeowners to respond to discovery requests filed by Rock Creek. In this order, the trial court stated that Rock Creek had filed a motion to compel on January 12, 2021, although such motion does not appear in the appellate record. Subsequently, on March 23, 2021, the trial court entered an order deeming admitted certain requests for admission sent to Homeowners by Rock Creek, pursuant to Tennessee Rule of Civil Procedure 36, based on Homeowners' failure to timely respond.[2] This order recites that Rock Creek filed a motion on January 13, 2021, asking that its previously transmitted requests for admission be deemed admitted. Rock Creek thereafter filed a motion seeking to strike Homeowners' pleadings, dismiss Homeowners' claims, and enter default judgment in favor of Rock Creek. In this motion, Rock Creek claimed that Homeowners had ignored the discovery requests sent to them as well as the trial court's orders. Each of these orders or pleadings bears a certificate of service demonstrating that copies were sent to Homeowners' address via the United States Postal Service.

On April 9, 2021, Homeowners' current counsel filed a notice of appearance. Subsequently, on April 16, 2021, Homeowners filed a motion seeking relief from the trial

---

[2] These requests for admission also do not appear in the appellate record.

court's orders entered on February 3 and March 23, 2021. Homeowners claimed that after their initial attorney withdrew from representation in October 2020, they were proceeding *pro se* for a period of time. According to Homeowners, they did not receive the discovery requests sent by Rock Creek or the trial court's February 3, 2021 order. Homeowners opined that there had been a problem with their mail delivery because their home had been recently constructed. Homeowners stated that upon receipt of the trial court's March 23, 2021 order, they had retained their current counsel, who filed the motion on Homeowners' behalf. Homeowners sought relief from the prior orders pursuant to Tennessee Rules of Civil Procedure 59 and 60 based on their lack of notice. Both Homeowners filed individual declarations respectively stating that they had received nothing in the mail concerning the case prior to their receipt of the March 23, 2021 order.

On April 29, 2021, Rock Creek filed a response to Homeowners' motion seeking relief from the trial court's previous orders. Disputing Homeowners' affidavits concerning lack of notice, Rock Creek averred that the discovery documents were hand delivered and placed inside Homeowners' mailbox on December 9, 2020. Rock Creek's response was supported by an affidavit from their counsel, who stated that he personally hand delivered the discovery documents and placed them in Homeowners' mailbox on December 9, 2020, at 5:15 p.m. Rock Creek's counsel also attached photographs of Homeowners' mailbox containing the hand-delivered documents.

On May 11, 2021, Homeowners filed a motion seeking partial dismissal of Rock Creek's counterclaim. Homeowners argued that Rock Creek's defamation claims constituted a violation of the TPPA, codified at Tennessee Code Annotated § 20-17-101, *et seq*. (2021), and that Rock Creek filed the defamation claims to retaliate against Homeowners for exercising their right to free speech. Tennessee Code Annotated § 20-17-102 (2021) provides:

> The purpose of [the TPPA] is to encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury. This chapter is consistent with and necessary to implement the rights protected by the Constitution of Tennessee, Article I, §§ 19 and 23, as well as by the First Amendment to the United States Constitution, and shall be construed broadly to effectuate its purposes and intent.

Tennessee Code Annotated § 20-17-104 (2021) specifically states that if "a legal action is filed in response to a party's exercise of the right of free speech" "that party may petition the court to dismiss the legal action."

According to Homeowners, any information they publicly posted concerning Rock Creek reflected their "truthful opinion of their experiences and interactions with . . . Rock Creek." Homeowners further averred that they had exercised their protected right to freedom of speech to "let the public know of their negative experience with Rock Creek." Homeowners therefore contended that Rock Creek's defamation claims fell within the purview of the TPPA and should be dismissed with prejudice. Homeowners also sought an award of attorney's fees and sanctions.

On November 29, 2021, the trial court entered an order denying Homeowners' motion seeking relief from the court's February 3 and March 23, 2021 orders. The court stated that inasmuch as Homeowners had predicated their request for relief upon excusable neglect, asserting that their mail had been mis-delivered, and Rock Creek had rebutted this contention by proving, via affidavit and photographic evidence, that the documents were left in Homeowners' mailbox, the motion for relief should be denied.

The trial court concomitantly entered an order denying Homeowners' motion for a partial dismissal of Rock Creek's defamation claims. In this order, the court stated in pertinent part:

> In [Homeowners'] *Partial Motion to Dismiss and Tenn. Code Ann. § 20-17-104(a) Petition to Dismiss Rock Creek's Defamation Claims Pursuant to the Tennessee Public Participation Act*, [Homeowners] argue that [Rock Creek] has not proven its *prima facie* case of defamation because [Rock Creek] did not suffer actual damages, the statements made by [Homeowners] were not factually false, and that the comments that were made did not meet the publication requirement of having been communicated to a third party. [Rock Creek] has provided evidence (in Ex. 1) of statements made online to third parties that they claim to be defamatory in that they harmed [Rock Creek's] reputation and caused damages.
>
> A motion to dismiss tests the legal sufficiency of a complaint, not the strength of the plaintiff's proof or evidence taking the allegations in the complaint as true for purposes of the motion. It does not address the facts of the case and the court must look at the motion in the light most favorable to the non-moving party.
>
> After review of the Motion based on the allegations raised in the original civil warrant and the counter-complaint, the Court is of the opinion that the motion is not well taken.

The following day, the trial court entered an order granting Rock Creek's pending motion by striking Homeowners' pleadings, dismissing Homeowners' claims, and

granting default judgment against Homeowners. In its order, the court stated in relevant portion:

> Upon review of [Rock Creek's] Motion at issue and [Homeowners'] Response thereto, the Court finds that [Homeowners'] response relies upon their prior *Motion to Alter or Amend* to refute [Rock Creek's] Motion at issue. [Homeowners'] *Motion to Alter or Amend* was denied by this Court as a result of the totality of the circumstances in this case, in large part that [Homeowners] alleged and swore "under penalty of perjury" that they believe that the USPS has been misdelivering their mail. However, [Rock Creek] provided photographic proof that the documents that gave rise to the Court's earlier Order were hand-delivered to [Homeowners'] mailbox. Therefore, admissions have been deemed admitted that there was no breach of contract by [Rock Creek], that no damages had been incurred by [Homeowners], that [Rock Creek] had suffered damages as a result of [Homeowners'] breach of contract in the amount specified in [Rock Creek's] invoice (Ex. 1), that [Homeowners] knowingly made false statements to third parties, and that [Rock Creek] was damaged as a result of those defamatory statements. Therefore, after considering [Rock Creek's] motion and [Homeowners'] response,
>
> IT IS HEREBY ORDERED that [Homeowners'] pleadings be struck, Plaintiff's Civil Warrant against [Rock Creek] be dismissed, and default judgment be entered against [Homeowners] in the amount of $16,015.10 plus court costs and attorneys' fees pertaining to [Homeowners'] admitted breach of contract.

Homeowners timely appealed.

## II. Issues Presented

Homeowners present the following issues for this Court's review, which we have restated slightly:[3]

1.   Whether the trial court erred in denying Homeowners' partial motion to dismiss filed pursuant to the TPPA.

2.   Whether Homeowners' partial motion to dismiss should be granted upon remand.

---

[3] We note that Homeowners have not appealed the trial court's dismissal of their claims against Rock Creek of breach of contract, property damage, or theft.

3.      Whether Homeowners should be awarded reasonable attorney's fees incurred in this appeal.

## III.  Standard of Review

Homeowners request that this Court review the trial court's denial of their partial motion to dismiss Rock Creek's defamation claims, which motion was filed pursuant to the dismissal provision contained within the TPPA.  Inasmuch as our analysis involves issues of statutory construction and interpretation, we will adhere to the following longstanding principles:

> When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc*., 90 S.W.3d 676, 678 (Tenn. 2002).  In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing.  *In re C.K.G*., 173 S.W.3d 714, 722 (Tenn. 2005).  When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).  Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc*., 202 S.W.3d 99, 102 (Tenn. 2006).  It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998).  Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968).  Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (1937).  We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Estate of Tanner*, 295 S.W.3d 610, 613-14 (Tenn. 2009).  "Moreover, when an issue on appeal requires statutory interpretation, we review the trial court's decision de novo with no presumption of correctness." *Nationwide Mut. Fire Ins. Co. v. Memphis Light, Gas & Water*, 578 S.W.3d 26, 30 (Tenn. Ct. App. 2018).

## IV. Denial of Homeowners' Partial Motion to Dismiss

Homeowners urge that the trial court erred in denying their partial motion to dismiss, which motion was predicated on the dismissal provision contained in the TPPA. In support, Homeowners posit that Rock Creek's counterclaim asserting, in pertinent part, defamation was filed in response to Homeowners' exercise of their constitutional right to free speech. Homeowners therefore contend that the court should have dismissed Rock Creek's defamation claims in accordance with the TPPA's provisions.

In order to better understand Homeowners' postulate, some historical background concerning the TPPA is necessary. As this Court has recently explained:

> The underlying matter involves the application of Tennessee's Anti-SLAPP law, the TPPA . . . . SLAPP suits are lawsuits used "as a powerful instrument of coercion or retaliation" against a defendant, George W. Pring & Penelope Canan, *"Strategic Lawsuits Against Public Participation" ("SLAPPS"): An Introduction for Bench, Bar and Bystanders*, 12 BRIDGEPORT L. REV. 937, 942 (1992) (quoting *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 740-41, 103 S. Ct. 2161, 76 L.Ed.2d 277 (1983)), and anti-SLAPP legislation such as the TPPA is designed to counteract such lawsuits and prevent "meritless suits aimed at silencing a plaintiff's opponents, or at least diverting their resources." John C. Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPs*, 26 LOY. L.A. L. REV. 395, 396 (1993).

> Enacted in 2019, the TPPA is designed to "encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury." Tenn. Code Ann. § 20-17-102. As with the typical design of anti-SLAPP statutes, the TPPA works to "discourage[] and sanction[] frivolous lawsuits and permits the early disposition of those cases before parties are forced to incur substantial litigation expenses." Todd Hambridge et al., *Speak Up.*, 55 Tenn. B.J. 14, 15 (2019). Although it has been noted that Tennessee had a limited anti-SLAPP statute before the TPPA, the TPPA "broadens anti-SLAPP protection." *Id.*

> The TPPA provides relief for parties who partake in protected activity constituting either the exercise of the right of association, the exercise of the right of free speech, or the exercise of the right to petition. Tenn. Code Ann. §§ 20-17-104(a), 20-17-105. Specifically, if the petitioning party makes a prima facie case that they have participated in protected activity under the TPPA, the court may then dismiss the action

against them, "unless the responding party establishes a prima facie case for each essential element of the claim in the legal action." Tenn. Code Ann. § 20-17-105(a)(b). The TPPA also provides definitions as to what constitutes these forms of protected activity. For example, an "exercise of the right of association" is an "exercise of the constitutional right to join together to take collective action on a matter of public concern that falls within the protection of the United States Constitution or the Tennessee Constitution." Tenn. Code Ann. § 20-17-103(2). An "exercise of the right of free speech" means "a communication made in connection with a matter of public concern or religious expression that falls within the protection of the United States Constitution or the Tennessee Constitution." Tenn. Code Ann. § 20-17-103(3). Finally, an "exercise of the right to petition" means "a communication that falls within the protection of the United States Constitution or the Tennessee Constitution and: (A) Is intended to encourage consideration or review of any issue by a federal, state, or local legislative, executive, judicial, or other governmental body; or (B) Is intended to enlist public participation in an effort to effect consideration of an issue by a federal, state, or local legislative, executive, judicial, or other governmental body[.]" Tenn. Code Ann. § 20-17-103(4).

Notably, the definitions above reveal that both the "exercise of the right of association" and the "exercise of the right of free speech" require that the activity be connected with a "matter of public concern." Tenn. Code Ann. § 20-17-103(2-3). As defined by the statute, a "matter of public concern" includes issues relating to: "(A) Health or safety; (B) Environmental, economic, or community well-being; (C) The government; (D) A public official or public figure; (E) A good, product, or service in the marketplace; (F) A literary, musical, artistic, political, theatrical, or audiovisual work; or (G) Any other matter deemed by a court to involve a matter of public concern." Tenn. Code Ann. § 20-17-103(6). As should be evident—and as some commentators have already observed—matters of public concern are "broadly defined" under the statute. Todd Hambridge et al., *Speak Up.*, 55 Tenn. B.J. 14, 15 (2019). Unlike the enumerated categories pertaining to "the exercise of the right of association" and the "exercise of the right of free speech," the "exercise of the right to petition" contains no statutory qualifier requiring that the activity involve a "matter of public concern." Again, under the statute, "exercise of the right to petition" simply means a "communication" that is constitutionally protected and is "intended to encourage consideration or review of an issue" by some form of governmental body or is "intended to enlist public participation in an effort to effect consideration of an issue" by a governmental body. Tenn. Code Ann. § 20-17-103(4)(A),(B).

*Doe v. Roe*, 638 S.W.3d 614, 617-19 (Tenn. Ct. App. 2021) (footnote omitted). As further elucidated by this Court in *Nandigam Neurology, PLC v. Beavers*, 639 S.W.3d 651, 658 (Tenn. Ct. App. 2021): "Plaintiffs in SLAPP suits do not intend to win but rather to chill a defendant's speech or protest activity and discourage opposition by others through delay, expense, and distraction" (quoting *Sandholm v. Kuecker*, 962 N.E.2d 418, 427 (Ill. 2012)).

One relevant section of the TPPA, codified at Tennessee Code Annotated § 20-17-104, provides in pertinent part:

(a)     If a legal action is filed in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may petition the court to dismiss the legal action.

(b)     Such a petition may be filed within sixty (60) calendar days from the date of service of the legal action or, in the court's discretion, at any later time that the court deems proper.

(c)     A response to the petition, including any opposing affidavits, may be served and filed by the opposing party no less than five (5) days before the hearing or, in the court's discretion, at any earlier time that the court deems proper.

Another relevant section, Tennessee Code Annotated § 20-17-105 (2021), further provides:

(a)     The petitioning party has the burden of making a prima facie case that a legal action against the petitioning party is based on, relates to, or is in response to that party's exercise of the right to free speech, right to petition, or right of association.

(b)     If the petitioning party meets this burden, the court shall dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim in the legal action.

(c)     Notwithstanding subsection (b), the court shall dismiss the legal action if the petitioning party establishes a valid defense to the claims in the legal action.

(d)     The court may base its decision on supporting and opposing sworn affidavits stating admissible evidence upon which the liability or defense is based and on other admissible evidence presented by the parties.

(e)     If the court dismisses a legal action pursuant to a petition filed under this chapter, the legal action or the challenged claim is dismissed with prejudice.

(f)     If the court determines the responding party established a likelihood of prevailing on a claim:

(1)     The fact that the court made that determination and the substance of the determination may not be admitted into evidence later in the case; and

(2)     The determination does not affect the burden or standard of proof in the proceeding.

In the instant action, the trial court entered an order on November 29, 2021, concerning the partial motion to dismiss. In this order, the court elucidated that Homeowners had filed their motion pursuant to the TPPA "to dismiss [Rock Creek's] defamation claim[s] regarding what [Homeowners] claim[] is protected free speech." The court further stated:

[Homeowners] argue that [Rock Creek] has not proven its *prima facie* case of defamation because [Rock Creek] did not suffer actual damages, the statements made by [Homeowners] were not factually false, and that the comments that were made did not meet the publication requirement of having been communicated to a third party. [Rock Creek] has provided evidence (in Ex. 1) of statements made online to third parties that [Rock Creek] claim[s] to be defamatory in that they harmed [Rock Creek's] reputation and caused damages.

Notwithstanding its acknowledgement that Homeowners had filed the motion pursuant to the TPPA and its consideration of the evidence filed by Rock Creek as an exhibit to the counterclaim, the court ostensibly proceeded to analyze and adjudicate the motion to dismiss utilizing a traditional Tennessee Rule of Civil Procedure 12.02(6) standard, which "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence" and requires the court to "construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *See Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). The court made no findings or conclusions concerning whether the TPPA was applicable regarding Rock Creek's claims of defamation. Moreover, if the TPPA does apply to such claims, the trial court failed to address (1) whether the time limitations contained in Tennessee Code Annotated § 20-17-104 had been satisfied or (2) whether the parties had met their respective burdens pursuant to

Tennessee Code Annotated § 20-17-105. Instead, the trial court denied Homeowners' motion without further explanation.

Although the TPPA is a relatively new statute, this Court has addressed issues concerning the proper application and construction of the TPPA in a few recent decisions. *See Doe*, 638 S.W.3d at 614; *Nandigam*, 639 S.W.3d at 651; *Charles v. McQueen*, No. M2021-00878-COA-R3-CV, 2022 WL 4490980 (Tenn. Ct. App. Sept. 28, 2022). Our review of these cases in conjunction with the TPPA's express language has revealed two general conclusions. First, when presented with a motion to dismiss filed pursuant to the TPPA, the threshold step in the trial court's analysis must be to determine whether the claim falls within the TPPA's parameters. This is determined by analyzing whether the petitioning party has demonstrated "a prima facie case that a legal action against the petitioning party is based on, relates to, or is in response to that party's exercise" of certain protected rights. Tenn. Code Ann. § 20-17-105(a); *Doe*, 638 S.W.3d at 619; *Charles*, 2022 WL 4490980, at *3.[4] Second, if the court determines that the petitioning party has met such requirements of the statute, "the court shall dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim in the legal action" or "if the petitioning party establishes a valid defense to the claims in the legal action." Tenn. Code Ann. § 20-17-105(a); *Nandigam*, 639 S.W.3d at 668; *Charles*, 2022 WL 4490980, at *10.

Rock Creek contends that the trial court properly applied the standard applicable to a traditional Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss, urging that Rule 12's provisions must prevail over the specific dismissal procedure outlined in the TPPA. In support of this assertion, Rock Creek relies upon numerous federal court decisions wherein it was determined that federal procedural rules prevail over the dismissal procedure outlined in the respective state's anti-SLAPP law in a federal court action based on diversity jurisdiction. *See, e.g.*, *Apex Bank v. Rainsford*, No. 3:20-CV-198, 2020 WL 12840460, at *3 (E.D. Tenn. Sept. 16, 2020). However, the federal courts have predicated these determinations on the United States Supreme Court's distinction between procedural law and substantive law existing in federal diversity actions as first outlined in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), and commonly referred to as the "*Erie* doctrine." *See id*. As such, those decisions have no applicability in this state court action.

Rock Creek also posits that in Tennessee, "[c]onflicts between provisions of the Tennessee Rules of Civil Procedure and Tennessee statutes which cannot be harmonized are resolved in favor of the Rules of Civil Procedure." *Pratcher v. Methodist Healthcare*

---

[4] Of course, the trial court must also necessarily determine whether the parties have met the statutory requirements concerning the timeliness of the petition's filing and of the response's filing. *See* Tenn. Code Ann. § 20-17-104. We will address the timeliness questions in a subsequent section of this Opinion.

*Memphis Hosps.*, 407 S.W.3d 727, 736 (Tenn. 2013).  However, Rock Creek has failed to demonstrate that the dismissal procedures outlined in Tennessee Rule of Civil Procedure 12.02(6) and in the TPPA cannot be harmonized.  Although this appears to be an issue of first impression in Tennessee, other states that have enacted similar anti-SLAPP legislation containing specific dismissal procedures have harmonized these distinct dismissal provisions with Rule 12's dismissal mechanism.

By way of example, we have considered the analysis of the District of Columbia Court of Appeals in *Am. Studies Ass'n v. Bronner*, 259 A.3d 728, 734 (D.C. 2021).  In *Bronner*, the petitioning party had filed a motion to dismiss pursuant to both District of Columbia Superior Court Rule of Civil Procedure 12(b)(6) and District of Columbia's anti-SLAPP law, which latter procedure contains a similar "burden-shifting" framework to that found in the TPPA.  *See id*.  The *Bronner* Court harmonized these dismissal procedures, determining that anti-SLAPP petitions would be analyzed pursuant to the framework provided in the statute.  *See id*.

Likewise, in *Alnylam Pharm., Inc. v. Dicerna Pharm., Inc*., 34 Mass. L. Rptr. 504, 2017 WL 6395719, at *1 (Mass. Super. Oct. 23, 2017), the petitioning party had filed a motion to dismiss pursuant to both Massachusetts Rule of Civil Procedure 12(b)(6) and that state's anti-SLAPP law, which contains a similar "burden-shifting" framework as that found in the TPPA.  *See id*.   In analyzing these motions, the Massachusetts trial court elucidated:

> The standards for evaluating Alnylam's anti-SLAPP motion and its Rule 12(b)(6) motion are different.  To survive a Rule 12(b)(6) motion to dismiss, a complaint or counterclaim must set forth the basis for the complainant's entitlement to relief with "more than labels and conclusions."  *Iannacchino v. Ford Motor Co*., 451 Mass. 623, 636 [(2008)], quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  At the pleading stage, Rule 12(b)(6) requires that the counterclaim set forth "factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief . . ."  *Id*., quoting *Bell Atl. Corp*., 550 U.S. at 557.  The court must, however, accept as true the factual allegations of the counterclaim and draw every reasonable inference in favor of the counterclaimant.  *Curtis v. Herb Chambers I-95, Inc*., 458 Mass. 674, 676 (2011).  The anti-SLAPP standard allows the court to consider more than the averments in the counterclaim.  "[T]he motion judge, in the exercise of sound discretion, is to assess the totality of the circumstances pertinent to the nonmoving party's asserted primary purpose in bringing its claim.  The course and manner of proceedings, the pleadings filed, and affidavits 'stating the facts upon which the liability or defense is based,' . . . may all be considered in evaluating whether the claim is a 'SLAPP' suit."

> *Blanchard v. Steward Carney Hospital, Inc.*, 477 Mass. 141, 160-61 (2017)
> (citations omitted).

*Id*.  The court therefore proceeded to analyze the anti-SLAPP motion pursuant to the burden-shifting framework provided in the statute while analyzing the claims subject to the Rule 12 motion pursuant to a traditional Rule 12 framework.  *Id*.  *See also Stark v. Lackey*, 458 P.3d 342, 344 (Nev. 2020) (harmonizing the dismissal procedure provided in Nevada's anti-SLAPP statute with Nevada Rule of Civil Procedure 12); *Metzler v. Rowell*, 547 S.E.2d 311, 315 (Ga. Ct. App. 2001) (harmonizing the dismissal procedure provided in Georgia's anti-SLAPP statute with a traditional motion to dismiss or for summary judgment).

We acknowledge that decisions from other state courts are merely persuasive authority and not binding on this Court.  *See Pope v. Nebco of Cleveland, Inc.*, 585 S.W.3d 874, 884 (Tenn. Workers Comp. Panel 2018) (citing *Ottinger v. Stooksbury*, 206 S.W.3d 73, 78 (Tenn. Ct. App. 2006)).  However, based upon our review of Tennessee precedent interpreting the TPPA and other states' decisions respecting similar anti-SLAPP statutes, we conclude that the dismissal provisions contained within the TPPA can be harmonized with the operation of Tennessee Rule of Civil Procedure 12.

We therefore reject Rock Creek's argument that the traditional Rule 12 dismissal procedure must be applied when dismissal is sought pursuant to the TPPA.  Instead, when a party files a motion to dismiss based on the TPPA, the dismissal procedure delineated in the TPPA should be followed regarding the respective claims.  To hold otherwise would render the dismissal provision contained within the TPPA statute meaningless.  "In interpreting a statute, we must avoid constructions which would render portions of the statute meaningless or superfluous."  *Leab v. S & H Mining Co.*, 76 S.W.3d 344, 350 n.3 (Tenn. 2002).

Based on the foregoing, we determine that the trial court's judgment denying Homeowners' partial motion to dismiss filed pursuant to the TPPA must be vacated.  We remand this matter to the trial court for an initial determination concerning whether the TPPA applies to Rock Creek's defamation claims.  If the trial court determines that the TPPA does apply, the court must then apply the dismissal procedure outlined in the TPPA when analyzing and ruling upon Homeowners' motion.

We also recognize Rock Creek's argument that Homeowners' motion relying on the TPPA was untimely pursuant to the deadline established in the statute.  We reiterate that the statute provides that a motion for dismissal filed pursuant to the TPPA "may be filed within sixty (60) calendar days from the date of service of the legal action or, in the court's discretion, at any later time that the court deems proper."  Tenn. Code Ann. § 20-17-104(b).

With respect to the time limitations prescribed in Tennessee Code Annotated § 20-17-104, we note that Rock Creek filed its counterclaim alleging defamation on May 21, 2020, serving it upon Homeowners via the United States Postal Service on that same date. However, Homeowners failed to file their motion seeking dismissal of the counterclaim pursuant to the TPPA until May 11, 2021, almost one year later. Consequently, Homeowners were clearly outside the sixty-day window for filing a TPPA petition as referenced in § 20-17-104(b).

Homeowners argue, however, that the trial court "implicitly exercised discretion to entertain the anti-SLAPP petition at a later time after the time period ordinarily contemplated by the statute." We note that the statute does grant the trial court discretion to consider a TPPA motion filed outside the sixty-day window. Although the trial court's November 29, 2021 order denying Homeowners' partial motion to dismiss expressly recited Homeowners' contentions concerning the TPPA, the court addressed neither the applicability of the TPPA nor the time requirements contained therein. Accordingly, we determine that the timeliness query should also be addressed by the trial court upon remand once the court has determined whether the TPPA is applicable to Rock Creek's defamation claims.

Respecting the second issue raised by Homeowners, they urge that the partial motion to dismiss must be granted upon remand due to Rock Creek's failure to comply with the statute's response requirement. Pursuant to the time limitations prescribed in Tennessee Code Annotated § 20-17-104, Rock Creek was required to file a response to the motion "no less than five (5) days before the hearing." Rock Creek never filed such a response. Therefore, Homeowners advance the position that their motion must be granted, relying on this Court's opinion in *Nandigam*. *See* 639 S.W.3d at 668 (holding that the trial court properly dismissed the plaintiffs' claims based on the TPPA inasmuch as the plaintiffs failed to timely respond to the TPPA petition). Upon careful review, we disagree with Homeowners on this point.

In the case at bar, the trial court made no determination concerning whether the TPPA was applicable to Rock Creek's defamation claims. As previously noted, this should be the initial focus of the court's analysis upon remand. If that issue is decided affirmatively, the court would then consider issues of timeliness concerning both the filing of the motion to dismiss and Rock Creek's response. Although the trial court did not address either of these issues in its order, we also note that the trial court's November 29, 2021 order expressly stated that no hearing was held concerning the motion due to our Supreme Court's "Amended Covid-19 Comprehensive Plan of Action" that was in effect at that time. Inasmuch as Tennessee Code Annotated § 20-17-104(c) specifies that the "response to the petition . . . may be served and filed by the opposing party no less than five (5) days before the <u>hearing</u>," and no hearing was scheduled, we cannot conclude under the circumstances of this case that Homeowners would be automatically entitled to a grant of their motion by reason of Rock Creek's lack of timely response.

- 14 -

Finally, if the trial court resolves the timeliness question in Homeowners' favor, the court should then proceed to apply the burden-shifting dismissal procedure outlined in the TPPA in order to properly analyze Homeowners' partial motion to dismiss. Should Homeowners succeed in achieving dismissal of Rock Creek's defamation claims pursuant to the TPPA, the trial court may then address any issue concerning an award of attorney's fees pursuant to the statute. *See* Tenn. Code Ann. § 20-17-104 (providing for an award of attorney's fees to the petitioning party "[i]f the court dismisses a legal action pursuant to a petition filed under this chapter"). Ergo, that issue is not ripe for adjudication by this Court.

Finally, inasmuch as we have concluded that the trial court's denial of Homeowners' partial motion to dismiss Rock Creek's defamation claims must be vacated, we need also consider whether the award of damages and attorney's fees assessed against Homeowners in the trial court's November 30, 2021 order can stand. We note that in this order, the trial court awarded a default judgment "against [Homeowners] in the amount of $16,015.10 plus court costs and attorneys' fees pertaining to [Homeowners'] admitted breach of contract." However, the court also stated that in making such award, the court had considered:

> [A]dmissions have been deemed admitted that there was no breach of contract by [Rock Creek], that no damages had been incurred by [Homeowners], that [Rock Creek] had suffered damages as a result of [Homeowners'] breach of contract in the amount specified in [Rock Creek's] invoice (Ex. 1), that [Homeowners] knowingly made false statements to third parties, and <u>that [Rock Creek] was damaged as a result of those defamatory statements</u>.

(Emphasis added.) Therefore, to the extent that the trial court granted any monetary award based upon Rock Creek's defamation claims, that portion of the trial court's judgment must be vacated and remanded for further consideration once Homeowners' motion to dismiss has been properly adjudicated.

## V. Conclusion

For the foregoing reasons, we vacate the trial court's denial of Homeowners' partial motion to dismiss Rock Creek's defamation claims, which motion was filed pursuant to the dismissal provision contained within the TPPA. We further vacate any portion of the trial court's monetary judgment that was based on Rock Creek's defamation claims. We remand this matter to the trial court for an adjudication of Homeowners' partial motion to dismiss, consistent with this Opinion, and a subsequent adjudication of damages and attorney's fees. Costs on appeal are assessed to the appellee, Rock Creek Construction, Inc.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE