**136 Nev., Advance Opinion 4**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| CAROLYN STARK, AN INDIVIDUAL, D/B/A NDOW WATCH KEEPING THEM TRANSPARENT, Appellant, vs. CARL LACKEY, Respondent. | No. 74449 <br><br> **FILED** <br><br> FEB 27 2020 <br><br> ELIZABETH A. BROWN <br> CLERK OF SUPREME COURT <br> BY_____ <br> CHIEF DEPUTY CLERK |



Appeal from a district court order denying a special motion to dismiss pursuant to NRS 41.660. Second Judicial District Court, Washoe County; Connie J. Steinheimer, Judge.

*Reversed and remanded with instructions.*

Winter Street Law Group and Stephanie R. Rice and Richard A. Salvatore, Reno,
for Appellant.

Gerber Law Offices, LLP, and Zachary A. Gerber and Travis W. Gerber, Elko; Durney & Brennan, Ltd., and Thomas R. Brennan, Reno; Rose Law Office and Sean P. Rose, Reno,
for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, J.:

Third-party comments posted to appellant Carolyn Stark's public Facebook page criticize respondent Carl Lackey for his handling of bears in his official capacity as a Nevada Department of Wildlife (NDOW)

20-07835

biologist. Lackey sued based on these comments, and in response, Stark filed a special motion to dismiss the action under Nevada's anti-SLAPP (strategic lawsuit against public participation) statutes. The district court denied the motion, concluding that not all of the comments were related to a matter of public interest or were shown to be true or made without knowledge of any falsehood, such that they constituted good-faith communications entitled to anti-SLAPP protections.

On appeal from the order denying the anti-SLAPP motion to dismiss, we hold that Stark met her burden of showing that the action was "based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern," thus satisfying prong one of the anti-SLAPP analysis set forth in NRS 41.660. Because the comments were directly connected with an issue of public concern, and because Stark submitted an affidavit that, in the absence of conflicting evidence, satisfies the requirement of showing that the comments were true or made without knowledge of any falsehood, the district court erred in finding that she failed to satisfy prong one so as to shift the burden to Lackey to demonstrate that the claims should be allowed to proceed. Therefore, we reverse and remand with instructions to the district court to address prong two of the anti-SLAPP analysis.

## FACTS AND PROCEDURAL HISTORY

Stark created and administers a public Facebook page entitled "NDOW Watch Keeping Them Transparent" (NDOW Watch). NDOW Watch serves as a forum for Stark and other NDOW Watch followers to comment on NDOW's treatment of wildlife. Lackey, a biologist with NDOW, manages the bear population in the state. At issue here are comments made by third-party followers on the NDOW Watch Facebook page that criticize Lackey and his actions concerning the Northern Nevada bear population.

Lackey brought suit against Stark based on these third-party comments. He alleged claims of defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and civil conspiracy. Stark sought to dismiss these claims pursuant to both an anti-SLAPP special motion to dismiss under NRS 41.635-.670 and a motion to dismiss under NRCP 12(b)(5). In her motions, Stark contended that she cannot be held liable for statements made by third parties on the NDOW Watch Facebook page on the sole basis that she administers the Facebook page. In addition, Stark affixed affidavits to her motions in which she affirmed that she has only made true statements on NDOW Watch and that she believes that the statements made by others on the Facebook page are either statements of opinion or contain substantial truth.

The district court denied Stark's motions. In denying the anti-SLAPP motion, the district court determined that several of the comments on the NDOW Watch Facebook page were not related to a matter of public interest, and that, even if they were, Stark's affidavit attesting to the veracity of the posts did not conclusively establish that the third-party posts were true or otherwise made without knowledge of their falsehood. In ruling on the Rule 12(b)(5) motion to dismiss, the district court determined that only one of the five alleged defamatory statements was not actionable. Stark appeals the district court's denial of the anti-SLAPP motion as to the remaining actionable statements, maintaining that the district court erred in its analysis.[1]

---

[1]While Stark does not specifically challenge the district court's denial of her NRCP 12(b)(5) motion to dismiss, Lackey asked us to affirm the same in his answering brief. Because Stark does not actually challenge the

## DISCUSSION

*The district court erred in finding that Stark failed to satisfy prong one of the anti-SLAPP analysis*

"A SLAPP suit is a meritless lawsuit that a party initiates primarily to chill a defendant's exercise of his or her First Amendment free speech rights." *Stubbs v. Strickland*, 129 Nev. 146, 150, 297 P.3d 326, 329 (2013). Nevada's anti-SLAPP statutes provide defendants with a procedural mechanism whereby they may file a special motion to dismiss the meritless lawsuit before incurring significant costs of litigation. NRS 41.660(1); *see also Coker v. Sassone*, 135 Nev. 8, 10, 432 P.3d 746, 748 (2019). We review the denial of an anti-SLAPP motion de novo. *Coker*, 135 Nev. at 10-11, 432 P.3d at 748-49.

Our anti-SLAPP statutes posit a two-prong analysis to determine the viability of a special motion to dismiss. *See Coker*, 135 Nev. at 12, 432 P.3d at 749. First, the district court must "[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a). Second, if the district court finds the defendant has met his or her burden, the court must then "determine

---

ruling, and because the denial of a motion to dismiss under NRCP 12(b)(5), unlike a special motion to dismiss under the anti-SLAPP statutes, is not independently appealable, we do not address it. *Compare Kirsch v. Traber*, 134 Nev. 163, 168, 414 P.3d 818, 822 (2018) (stating an order denying a motion to dismiss is not appealable), *and* NRAP 3A(b) (listing the appealable determinations), *with* NRS 41.670(4) (providing for interlocutory review of an order denying an anti-SLAPP special motion to dismiss).

(O) 1947A

whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim." NRS 41.660(3)(b).

The showing required by the defendant to satisfy prong one has two components. The first component is that the comments at issue fall into one of the four categories of protected communications enumerated in NRS 41.637. *See Delucchi v. Songer*, 133 Nev. 290, 299, 396 P.3d 826, 833 (2017). The category at issue in this case is "[c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum." NRS 41.637(4). The second component is that the communication "is truthful or is made without knowledge of its falsehood." NRS 41.637; *see Delucchi*, 133 Nev. at 299, 396 P.3d at 833.

Here, the district court found that Stark failed to meet her burden because not all of the comments on the NDOW Watch Facebook posts were sufficiently related to the stated public interest and because her affidavit failed to establish that the third-party posts were true or otherwise made without knowledge of their falsehood. We disagree.

But before discussing the district court's error, we note that throughout briefing and oral argument, Stark argues that she is immunized from liability in this matter by the Communications Decency Act (CDA), 47 U.S.C. § 230 (2012), because she did not author any of the third-party posts and served only as a provider or user of an interactive computer service. However, the first prong of the anti-SLAPP analysis does not require that the comments at issue actually be made by the defendant, and instead focuses only on whether the comments constituted protected communication made in good faith. *See* NRS 41.660(1) (setting forth the procedure for when "an action is brought against a person *based upon a good faith communication* in furtherance of the right to petition or the right

to free speech in direct connection with an issue of public concern" (emphasis added)). The issue of whether the defendant may be held liable for the communication only becomes a consideration in the second prong of the anti-SLAPP analysis, when the burden shifts to the plaintiff to demonstrate "a probability of prevailing on the claim." NRS 41.660(3)(b). In this case, because the district court never reached the second prong and did not go beyond the allegations in addressing it in relation to the NRCP 12(b)(5) motion, we do not address Stark's immunity argument but instead, as provided below, instruct the district court to consider the argument on remand.

*The statements were "made in direct connection with an issue of public interest . . . in a public forum"*

Regarding the first required showing under prong one,[2] Stark claimed that the statements were made in connection with an issue of public interest—namely, the treatment of wildlife in Lake Tahoe and, specifically, concerns stemming from NDOW's trapping and euthanizing bears in the Lake Tahoe region. In determining whether an issue is in the public interest, we use the guiding principles that we adopted from California:

> (1) "public interest" does not equate with mere curiosity;

---

[2]We note that the parties do not dispute, and we agree, that NDOW Watch Facebook page is a public forum. *See Barrett v. Rosenthal*, 146 P.3d 510, 514 n.4 (Cal. 2006) ("Web sites accessible to the public . . . are 'public forums' for the purposes of the anti-SLAPP statute." ); *Cross v. Facebook, Inc.*, 222 Cal. Rptr. 3d 250, 258 (Ct. App. 2017) (agreeing with the trial court's determination that "[i]t cannot be disputed that Facebook's website and the Facebook pages at issue are 'public forums,' as they are accessible to anyone who consents to Facebook's Terms" (internal quotation marks omitted)). Thus, our analysis here focuses on whether the comments were made in direct connection with an issue of public interest.

(2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest;

(3) there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient;

(4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and

(5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Shapiro v. Welt*, 133 Nev. 35, 39-40, 389 P.3d 262, 268 (2017) (quoting *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 968 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 497 (9th Cir. 2015)).

Applying these factors here, we conclude that the treatment of Nevada wildlife, and specifically bears in the Tahoe Basin, surpasses mere curiosity and is a concern to many people throughout the state. *See Shapiro*, 133 Nev. at 39, 389 P.3d at 268. Furthermore, each of the four comments at issue expresses a critique of NDOW's handling of the bear population or a critique of Lackey in his role as an NDOW biologist, demonstrating sufficient closeness to the asserted public interest.[3] For example, one

---

[3]The four statements from the first amended complaint at issue on appeal are as follows:

q. "He and his family directly benefit by him moving bears to a hunting area if they are issued a license and the killing of them in the name of public

comment (statement q) states that "if we can establish that he or his family benefits financially from selling bear parts or selling the location where he recently released a bear—he should go to jail." The district court erroneously found that this comment did not relate to the stated public interest because its "main focus concerns potential benefits Lackey may receive, and hypothesizes that Lackey should go to jail if they can prove he sells bear parts." In fact, this comment directly relates to the stated public interest of the treatment of bears in Nevada because it questions Lackey's activities in his role as an NDOW biologist. Just because the comment presented a hypothetical about Lackey's conduct, it does not follow that it was not directly related to the public interest. We conclude that all four comments concern the handling of bears by NDOW or Lackey and thus

---

safety must simply be something that excites him— all of it in conflict with NDOW's mission. Additionally, if we can establish that he or his family benefits financially from selling bear parts or selling the location where he recently released a bear—he should go to jail."

r. "Yes he should go to jail! The treatment of our bears is paramount cruelty. Moving mothers without their cubs, moving them to hunt zones, moving them great distances knowing full well there are no food sources or water and that they will try to return home! Animal cruelty is a felony in all 50 states. Him and his NDOW murderers need to go to jail and stay there."

s. "It's time for the NV ENGINEERED bear hunt."

y. "Lackey is such an incompetent asshole!! Fire his ass!!"

We reiterate our conclusion that each comment directly concerns the asserted public interest in critiquing either NDOW or its employees in their handling of the bear population.

directly relate to the stated public interest of the treatment of bears in Nevada. *See Coker*, 135 Nev. at 14, 432 P.3d at 751 (defining an issue of public interest broadly for purposes of the anti-SLAPP statutes).

*Stark's affidavit, in the absence of evidence to the contrary, met her burden of showing that the communications were truthful or made without knowledge of falsity*

With respect to the second required showing under prong one of the anti-SLAPP analysis, the defendant bears the burden of establishing by a preponderance of the evidence that the communication "is truthful or is made without knowledge of its falsehood." NRS 41.637; NRS 41.660(3)(a). In Stark's affidavit, attached to her anti-SLAPP motion, she stated that she has only made true statements on NDOW Watch and that she believes that the statements made by others on NDOW Watch are either statements of opinion or contain substantial truth. The district court determined that Stark failed to meet her burden because her affidavit did not specifically address the individual factual allegations in each comment. We conclude this finding was clearly erroneous.

Though the affidavit did not address the individual factual allegations in the statements or specifically attest to the truthfulness of the speaker who made the statements, we have previously held that a sworn declaration like Stark's is sufficient evidence that the statements were truthful or made without knowledge of their falsehood. *See Delucchi*, 133 Nev. at 300, 396 P.3d at 833. We acknowledge that our holding in *Delucchi* involved the pre-2013 version of NRS 41.660, which imposed a summary-judgment burden of proof on the defendant rather than the preponderance of the evidence burden required in the current version of the statute. *See Coker*, 135 Nev. at 10, 432 P.3d at 748 ("In 2013, the Legislature removed the language likening an anti-SLAPP motion to dismiss to a motion for

summary judgment and set forth a specific burden-shifting framework."). Despite this change in evidentiary burden, we now hold that even under the preponderance standard, an affidavit stating that the defendant believed the communications to be truthful or made them without knowledge of their falsehood is sufficient to meet the defendant's burden absent contradictory evidence in the record. *Cf. Davis v. Cox*, 351 P.3d 862, 867 (Wash. 2015) (contrasting the more exacting summary judgment standard, which requires "a legal certainty" that can be defeated by a dispute of a material fact, with a preponderance of the evidence burden, which examines "whether the evidence crosses a certain threshold of proving a likelihood of prevailing on the claim"), *abrogated on other grounds by Maytown Sand & Gravel, LLC v. Thurston Cty.*, 423 P.3d 223, 440 n.15 (Wash. 2018), *abrogated in part by Yim v. City of Seattle*, 451 P.3d 694, 704-05 (Wash. 2019). Because Stark's affidavit made it more likely than not that the communications were truthful or made without knowledge of their falsehood, and there is no evidence in the record to the contrary, we conclude that she met her burden of showing that the third-party comments were made in good faith, so as to satisfy prong one.

## CONCLUSION

The district court erred in determining that the comments at issue were not in the public interest and were not made in good faith. Because Stark's affidavit established that the comments were protected communications and were truthful or made without knowledge of their falsehood, Stark met her burden under the first prong of the anti-SLAPP analysis. Therefore, we reverse the district court's order denying Stark's special motion to dismiss and remand this matter to the district court with instructions for it to address prong two of the anti-SLAPP analysis. Specifically, we instruct the district court to consider the applicability of the

 

Communications Decency Act, 47 U.S.C. § 230 (2012), in determining whether Lackey can demonstrate "a probability of prevailing on the claim."[4] NRS 41.660(3)(b).

_____, J.
Hardesty

We concur:

_____, C.J.
Pickering

_____, J.
Parraguirre

_____, J.
Cadish

_____, J.
Gibbons

_____, J.
Stiglich

_____, J.
Silver

_____

[4]Because the CDA precludes liability where applicable, and because the second prong of the anti-SLAPP analysis asks whether the plaintiff's claims will likely succeed, we decline to address these arguments, as they are more properly considered under the second prong. We further advise the district court to permit discovery to the extent necessary to determine whether the CDA immunizes Stark from liability in its consideration of prong two.