139 Nev., Advance Opinion 53

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| LAWRENCE F. PANIK, AN INDIVIDUAL, Appellant, vs. TMM, INC., A NEVADA CORPORATION, Respondent. | No. 84679 FILED NOV 30 2023 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY _____ CHIEF DEPUTY CLERK |

Appeal from a district court order denying an anti-SLAPP special motion to dismiss. Eighth Judicial District Court, Clark County; Gloria Sturman, Judge.

*Reversed and remanded.*

Weide & Miller, Ltd., and F. Christopher Austin, Las Vegas, for Appellant.

Lex Tecnica Ltd. and Adam R. Knecht and Vincent J. Garrido, Las Vegas, for Respondent.

_____

BEFORE THE SUPREME COURT, STIGLICH, C.J., and LEE and BELL, JJ.

*OPINION*

By the Court, STIGLICH, C.J.:

Nevada's anti-SLAPP statutes are intended to protect citizens' First Amendment rights to petition the government for redress of grievances and to free speech by limiting the chilling effect of civil actions

SUPREME COURT OF NEVADA

(O) 1947A

23-38820

that are based on the valid exercise of those rights in connection with an issue of public concern (SLAPP actions). 1997 Nev. Stat., ch. 387, at 1363 (preamble to bill enacting anti-SLAPP statute). To achieve that intended goal, the statutes allow defendants to file a special motion to dismiss to obtain an early and expeditious resolution of a meritless claim for relief that is based on protected activity, as defined in NRS 41.637. NRS 41.650; NRS 41.660.

In this opinion, we clarify that the anti-SLAPP statutes do not exclude any particular types of claims for relief from their scope because the focus is on the defendant's activity, not the form of the plaintiff's claims for relief. The district court thus erred in concluding that the claims against appellant Lawrence F. Panik "do not fall within the categories of claims subject to the [a]nti-SLAPP statute," without further analysis. And because we conclude that Panik established by a preponderance of the evidence that respondent TMM, Inc. (TMMI) brought its claims based upon Panik's "good faith communication[s] . . . in direct connection with an issue of public concern," NRS 41.660(1), we reverse the district court's order and remand with instructions to address prong two of the anti-SLAPP analysis.[1]

### FACTS AND PROCEDURAL HISTORY

Panik is the president and CEO of nonparty Dimension, Inc. In 2000, Panik and several other nonparties invested in a company, Digital Focus, Inc. (DFI), to purchase the license to a computer code (the Code). DFI later transferred its interest in the Code license to nonparty Digital Focus Media, Inc. (DFMI), Dimension's predecessor-in-interest. TMMI purchased DFI and sued Dimension and DFMI in 2013 seeking to establish

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted.

its rights to the Code license (the 2013 lawsuit). The district court found that Dimension owned the rights to the Code license, and this court affirmed. *See TMM, Inc. v. Dimension, Inc.*, Nos. 72025 & 72779, 2018 WL 6829001 (Nev. Dec. 27, 2018) (Order of Affirmance).

In 2019, Dimension brought the underlying action (the 2019 lawsuit) against TMMI for abuse of process relating to the 2013 lawsuit. During settlement discussions, TMMI discovered that Dimension was in possession of several Code derivatives that TMMI contends belong to it. Settlement discussions ceased, and TMMI filed counterclaims against Dimension, alleging that Dimension converted the disputed Code derivatives from TMMI. TMMI later filed a third-party complaint against Panik, asserting claims for trade libel, misappropriation of trade secrets, conversion, injunctive relief, abuse of process, and alter ego liability. TMMI alleged that Panik made statements to "current and prospective [TMMI] shareholders, directors, [and] officers" that Dimension, not TMMI, owns the exclusive rights to the Code and its derivatives and that TMMI was defrauding its shareholders, directors, and officers by claiming it owned the disputed derivatives. Panik filed an anti-SLAPP special motion to dismiss, arguing that TMMI filed its third-party claims in retaliation for Panik's alleged statements concerning the rights to the Code derivatives. Panik now appeals from the district court's order denying that motion.

## DISCUSSION

We review a district court's "decision to grant or deny an anti-SLAPP special motion to dismiss de novo." *Smith v. Zilverberg*, 137 Nev. 65, 67, 481 P.3d 1222, 1226 (2021). We also review a district court's interpretation of a statute de novo. *Zohar v. Zbiegien*, 130 Nev. 733, 737, 334 P.3d 402, 405 (2014). Nevada's anti-SLAPP statutes direct the district

court to conduct a two-prong analysis, where it must first "[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim[s are] based upon a good faith communication in furtherance of . . . the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a). To meet the burden under the first prong, the defendant must show "that the comments at issue fall into one of the four categories of protected communications enumerated in NRS 41.637."[2] *Stark v. Lackey,* 136 Nev. 38, 40, 458 P.3d 342, 345 (2020). Once the defendant establishes that the communications fall within one of those categories, they must then demonstrate "that the communication 'is truthful or [wa]s made without knowledge of its falsehood.'" *Id.* (quoting NRS 41.637). "[I]f the district court finds the defendant has met his or her burden" under the first prong, "the court must then 'determine whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on [its] claim[s].'" *Id.* (quoting NRS 41.660(3)(b)).

*The district court erred in its interpretation and application of the anti-SLAPP statutes*

Panik argues that the district court failed to apply the correct standard under the first prong of the anti-SLAPP analysis when it summarily concluded that the claims against Panik "do not fall within the categories of claims subject to the [a]nti-SLAPP statute." We agree.

---

[2]The four categories of protected communications are any (1) communication "aimed at procuring any governmental or electoral action"; (2) communication to government or political entities "regarding a matter reasonably of concern to" that entity; (3) "[w]ritten or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law;" and (4) "[c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum." NRS 41.637.

"When interpreting a statute, we look to its plain language. If a statute's language is plain and unambiguous, we enforce the statute as written, without resorting to the rules of construction." *Zilverberg*, 137 Nev. at 72, 481 P.3d at 1230 (citation omitted). Nevada's anti-SLAPP statutes provide immunity "from any civil action for claims based upon" a person's protected good faith communications. NRS 41.650; *see also* NRS 41.660(1)(a) (providing that, when "an action is brought against a person based upon a [protected] good faith communication," that person "may file a special motion to dismiss" the action). The statute's plain language directs courts to examine the substance of the defendant's communications, not the title of the plaintiff's claims for relief. NRS 41.660(3)(a) ("If a special motion to dismiss is filed . . . , the court shall . . . [d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern . . . ."). As the California Supreme Court has explained in discussing California's similar anti-SLAPP statute, "[t]he . . . statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." *Navellier v. Sletten*, 52 P.3d 703, 711 (Cal. 2002).[3]

NRS 41.660(3)(a) affords the defendant (the moving party) the opportunity to establish that the plaintiff's claims for relief are based upon

---

[3]Given "the similarities between California's and Nevada's anti-SLAPP statutes," this court has "routinely look[ed] to California courts for guidance in this area." *Coker v. Sassone*, 135 Nev. 8, 11, 432 P.3d 746, 749 (2019).

protected good faith communications. That first step in the anti-SLAPP analysis necessarily looks beyond the form of the plaintiff's claims for relief, which makes sense given the purpose of the anti-SLAPP statutes' special-motion-to-dismiss procedure—to provide a mechanism for the expeditious resolution of meritless SLAPPs regardless of the form the SLAPP takes. *See* NRS 41.660(2) (allowing a defendant 60 days after service of a complaint based on the defendant's good faith communication in furtherance of petitioning or speech rights to file a special motion to dismiss). If the focus were instead on the form of the plaintiff's claims for relief, the plaintiff would be completely in control of the anti-SLAPP statutes' application. This would allow the plaintiff to circumvent the Legislature's intent to limit the chilling effect that SLAPPs have on the rights to petition and to speech and frustrate the quick resolution of meritless SLAPPs. Accordingly, "[c]onsistent with the broad construction that the anti-SLAPP statute is to receive, [the statute] may apply to *any* cause of action." Thomas R. Burke, *Anti-SLAPP Litigation* § 4.1 (2022) (observing that anti-SLAPP protections have been extended to over 40 different types of claims). Indeed, we have recognized that anti-SLAPP protections may apply in cases involving a variety of claims for relief. *See, e.g., Zilverberg*, 137 Nev. at 66-69, 481 P.3d at 1226-28 (defamation per se, conspiracy, and injunctive relief); *Abrams v. Sanson*, 136 Nev. 83, 85, 458 P.3d 1062, 1065 (2020) (defamation, intentional and negligent infliction of emotional distress, false light, business disparagement, civil conspiracy, and concert of action); *Delucci v. Songer*, 133 Nev. 290, 292, 396 P.3d 826, 828 (2017) (defamation and intentional infliction of emotional distress).

Here, rather than evaluating the statements that are the basis of TMMI's third-party claims against Panik, the district court considered

whether those claims were of the type entitled to anti-SLAPP protections. Because the statutes do not limit anti-SLAPP protections to only certain claims for relief, the district court erred when it denied Panik's motion based on its finding that "the subject claims do not fall within the categories of claims subject to the [a]nti-SLAPP statute."

*Panik met his burden under the first prong*

Panik further argues that he met his burden under the first prong of the anti-SLAPP analysis. Under that prong, Panik was required to demonstrate by a preponderance of the evidence that his statements fell within one of the four statutorily defined categories of protected speech. *See* NRS 41.637. TMMI alleged that Panik made statements to its shareholders, directors, and officers challenging TMMI's claim to the Code derivatives.[4] We agree with Panik that such statements were "made in direct connection with an issue under consideration by a . . . judicial body," NRS 41.637(3), and thus fall within one of the statute's categories. Indeed, the statements were directly connected to the ultimate issue in TMMI's counterclaims in the 2019 lawsuit, and Panik made those statements to people with an interest in the litigation—TMMI directors, officers, shareholders, and potential shareholders. *See Patin v. Lee*, 134 Nev. 722, 726, 429 P.3d 1248, 1251 (2018) (explaining that for a statement to be protected under NRS 41.637(3), "the statement must (1) relate to the

---

[4]While the parties dispute whether Panik made the challenged statements, the court "must evaluate the communication as it is alleged in the plaintiff's complaint and in any of the plaintiff's clarifying declarations." *Spirtos v. Yemenidjian*, 137 Nev. 711, 715-16, 720, 499 P.3d 611, 616-17, 620 (2021) ("[A] moving party's denial that he or she made the alleged statements has no relevance . . . .").

substantive issues in the litigation and (2) be directed to persons having some interest in the litigation").

Panik also met his burden to establish that his statements were "truthful or made without knowledge of [their] falsehood." NRS 41.637; *see also Coker v. Sassone*, 135 Nev. 8, 12, 432 P.3d 746, 749 (2019) (recognizing this as part of the movant's burden). In particular, Panik offered the final judgment from the 2013 lawsuit, which held that Dimension was the sole owner of the Code license, as well as several addendums to the original Code license agreement that support his belief that Dimension is the sole owner of any Code derivatives, including those at dispute in TMMI's counterclaims. Panik also provided a declaration stating that he believes the statements concerning Dimension's exclusive rights are true. That evidence, "absent [any] contradictory evidence in the record," is sufficient to meet Panik's burden of showing that the statements were made in good faith. *See Stark*, 136 Nev. at 43, 458 P.3d at 347 (holding that "an affidavit stating that the defendant believed the communications to be truthful . . . is sufficient to meet [his] burden absent contradictory evidence in the record").

*The district court applied an incorrect standard in evaluating TMMI's claims under the second prong*

Finally, Panik argues that the district court also erred when it evaluated TMMI's claims under the second prong because the court applied the wrong test, finding "that [TMMI's] claims [were] prompted by TMMI's good faith belief in material issues of fact." We agree.

The language in the district court's order indicates that the court treated Panik's motion as one for summary judgment. Doing so ignores the statute's direction that, on the second prong analysis, the court must "determine whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on [its] claim[s]." NRS 41.660(3)(b). As

explained in *Coker*, while the previous version of NRS 41.660 "instructed courts to treat [a] special motion to dismiss as a motion for summary judgment, . . . [i]n 2013, the Legislature removed [that] language . . . and set forth [the] specific burden-shifting framework" noted above. 135 Nev. at 10, 432 P.3d at 748.

Because the statute no longer directs district courts to treat a special motion to dismiss as one for summary judgment, the relevant inquiry is not whether the plaintiff can establish a genuine issue of material fact, but whether the plaintiff can produce prima facie evidence in support of its claims. *Compare* NRCP 56 (directing the district court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact"), *with* NRS 41.660(3)(b) (requiring the plaintiff to demonstrate "a probability of prevailing on [its] claim[s]" with prima facie evidence). In conducting the second prong analysis, the district court must "review each claim and assess the plaintiff's probability of prevailing," which "is determined by comparing the evidence presented with the elements of the claim." *Zilverberg*, 137 Nev. at 70-71, 481 P.3d at 1229. The district court's analysis here did not comport with NRS 41.660's burden-shifting framework, as it failed to consider whether TMMI produced prima facie evidence sufficient to demonstrate that its third-party claims against Panik "have minimal merit." *Id.* at 70, 481 P.3d at 1229; *see also Abrams*, 136 Nev. at 91, 458 P.3d at 1069 (adopting California's "minimal merit" burden under the second prong of the analysis).

## CONCLUSION

Nevada's anti-SLAPP statutes make clear that on prong one of the analysis, the district court's focus in evaluating a special motion to dismiss must be on the defendant's communications rather than the form of the plaintiff's claims. We conclude that Panik has met the burden under

SUPREME COURT
OF
NEVADA

(O) 1947A

the first prong of the anti-SLAPP analysis by demonstrating that the claims in the complaint are based on "good faith communication[s] . . . in direct connection with an issue of public concern." NRS 41.660(1). Because Panik satisfied the burden under the first prong and the district court did not apply the correct analysis under the second prong of the anti-SLAPP analysis, we reverse the district court's order and remand this matter with instructions for the district court to determine, consistent with NRS 41.660(3)(b), whether TMMI "has demonstrated with prima facie evidence a probability of prevailing on [its] claim[s]."[5]

_____, C.J.
Stiglich

We concur:

_____, J.
Lee

_____, J.
Bell

---

[5]Given our disposition, we deny Panik's request for an award of attorney fees, costs, and an additional award under NRS 41.670(1), as that statute only authorizes the court to make such an award after it grants a special motion to dismiss.

SUPREME COURT
OF
NEVADA

(O) 1947A