Nelson v Ardrey (2024 NY Slip Op 04147)

Nelson v Ardrey

2024 NY Slip Op 04147

Decided on August 7, 2024

Appellate Division, Second Department

Love, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 7, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
LINDA CHRISTOPHER
WILLIAM G. FORD
LAURENCE L. LOVE, JJ.

2022-07158
 (Index No. 2906/21)

[*1]Glennis M. Nelson, respondent, 
v
Tyshawn Ardrey, et al., appellants.

APPEAL by the defendants, in an action, inter alia, to recover damages for defamation per se, from an order of the Supreme Court (James L. Hyer, J.), dated August 11, 2022, and entered in Orange County. The order, insofar as appealed from, denied that branch of the defendants' motion which was pursuant to CPLR 3211(a)(7) and (g) to dismiss the first cause of action, alleging defamation per se.

Farber Schneider Ferrari LLP, New York, NY (Daniel J. Schneider of counsel), for appellants.
Pascazi Law Offices PLLC, Fishkill, NY (Michael S. Pascazi of counsel), for respondent.

LOVE, J.

OPINION & ORDER
More than 30 years ago, the Legislature enacted legislation to protect the exercise of free speech by deterring "strategic lawsuits against public participation," also known as SLAPP suits (see L 1992, ch 767, § 1 [eff Jan. 1, 1993]). Provisions of the anti-SLAPP statute (see Civil Rights Law §§ 70-a, 76-a) allow for the imposition of costs, attorney's fees, and compensatory and punitive damages against a plaintiff who files a SLAPP suit. In 2020, the Legislature enacted amendments expanding the protection of the anti-SLAPP statute to claims based upon any communication in a place open to the public or a public forum in connection with an issue of public interest (see L 2020, ch 250 [eff Nov. 10, 2020]). A question of first impression before this Court on this appeal is whether Facebook and other similar social media platforms constitute public forums under the anti-SLAPP statute.
Relevant Facts
On or about April 21, 2021, the defendants, Tyshawn Ardrey and Iriana Ardrey, posted a series of responses to a post on the personal Facebook page of the plaintiff, Glennis M. Nelson, alleging that the plaintiff had sexually abused Iriana Ardrey approximately 17 years prior when she was 4 years old. In May 2021, the plaintiff commenced this action against the defendants asserting causes of action to recover damages for defamation per se, intentional infliction of emotional distress, and prima facie tort. In his verified complaint dated June 22, 2021, the plaintiff alleged that the statements posted to his Facebook page were false, that the defendants' publications were intentional and were solely motivated by spite with the intention to injure the plaintiff's reputation in the community, and that as the alleged conduct in those statements accused him of a serious crime, they constituted defamation per se (see Kasavana v Vela, 172 AD3d 1042, 1044). In [*2]February 2022, the defendants moved, as relevant to this appeal, pursuant to CPLR 3211(a)(7) and (g) to dismiss the first cause of action alleging defamation per se. The plaintiff opposed the motion. In an order dated August 11, 2022, the Supreme Court, inter alia, denied that branch of the defendants' motion. The defendants appeal.
Discussion
As discussed in VIP Pet Grooming Studio, Inc. v Sproule (224 AD3d 78, 82), the 1992 version of the anti-SLAPP statute was "designed to protect citizens who participate in public affairs" against retaliatory lawsuits. As such, the statute narrowly defined the class of people protected by the statute. Pursuant to Civil Rights Law former § 76-a(1)(a), "An 'action involving public petition and participation' is an action, claim, cross claim or counterclaim for damages that is brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission." Similarly, the statute narrowly defined "Public applicant or permittee" as "any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body, or any person with an interest, connection or affiliation with such person that is materially related to such application or permission" (id. § 76-a[1][b]). In order to effect the purpose of the statute, the legislation provided that defendants could interpose a counterclaim which, if successful, could potentially recover costs, attorney's fees, and compensatory and punitive damages (see id. § 70-a[1][a], [b], [c]). The statute also specified that "damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue" (id. § 76-a[2]). The Legislature also added a subdivision to CPLR 3211 such that where the defendant demonstrates that the action is an action involving public petition and participation, dismissal shall be granted unless the party responding to the motion demonstrates that the claim "has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law" (id. § 3211[g]; see VIP Pet Grooming Studio, Inc. v Sproule, 224 AD3d at 83; Mable Assets, LLC v Rachmanov, 192 AD3d 998, 1000).
In 2020, the Legislature expanded the protections of the anti-SLAPP statute from the former, narrowly tailored statute to include a broad, almost all-encompassing group of citizens, defining a SLAPP suit as "a claim based upon:
"(1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or
"(2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition" (Civil Rights Law § 76-a[1][a]).
The anti-SLAPP statute was similarly broadened to include the term "[p]ublic interest," which "mean[s] any subject other than a purely private matter" (id. § 76-a[1][d]).
At issue in this case is whether Facebook and similar social media platforms constitute public forums under the anti-SLAPP statute. The term "public forum" is traditionally interpreted as a place that is open to the public where information is freely exchanged (see Cornelius v NAACP Legal Defense & Educ. Fund, Inc., 473 US 788, 802). Under its plain meaning, the term "public forum" has evolved to include, inter alia, podcasts (see Gillespie v Kling, 217 AD3d 566, 567), as well as internet forums that feature customer reviews of various businesses (see VIP Pet Grooming Studio, Inc. v Sproule, 224 AD3d at 85; Aristocrat Plastic Surgery, P.C. v Silva, 206 AD3d 26, 30).
Likewise, we determine that Facebook also qualifies as a "public forum" as that term is used under the anti-SLAPP statute. From its infancy, when its membership was restricted to Harvard students and was known as "thefacebook," Facebook has provided each user with a virtual "wall" where each user can share on his or her wall, or any other public wall, his or her thoughts, pictures, opinions, and links to other websites and articles (see Andrew B. Delaney & Darren A. Heitner, Made for Each Other Social Media and Litigation, 85 NY St BJ 10 [Feb. 2013]). As such, Facebook has, from inception, had the appearance and function of a forum. Thereafter, on [*3]September 26, 2006, Facebook became available for access and use by every person over the age of 13 years old with a valid email address, reporting over a billion monthly users by the end of 2012 (see id.). As of the writing of this opinion, Facebook is the third most popular website in existence (see Similarweb, https://www.similarweb.com/top-websites/ [last accessed June 12, 2024]). Accordingly, Facebook has been both public and a forum for almost 20 years.
An analysis of the legislative history of the anti-SLAPP statute reveals that the Legislature intended to include Facebook and other social media platforms within the meaning of public forum. The purpose of the anti-SLAPP statute in 1992, and continuing through its 2020 amendments, has been to provide "the utmost protection for the free exercise or speech, petition[,] and association rights, particularly where such rights are exercised in a public forum with respect to issues of public concern" (L 1992, ch. 767; see Assembly Mem in Support, Bill Jacket, L 2020, ch 250). In their memorandums to New York's Governor encouraging passage of the updated anti-SLAPP statute, the New York State Bar Association Committee on Media Law noted "a dramatic expansion of SLAPP suits filed against reporters, filmmakers, candidates for political office, and even individuals commenting on social media" (NY State Bar Assn Comm on Media Law Mem, Bill Jacket, L 2020, ch 250 at 16), and the New York Civil Liberties Union noted that "as social media has amplified the public's capacity to speak truth to power, SLAPPs have grown commonplace" (NY Civ Liberties Union Mem, Bill Jacket, L 2020, ch 250 at 20). Both memorandums highlighted the need to align New York's speech protections with those of California, Texas, Louisiana, Nevada, Oregon, Colorado, and approximately 25 other states.
Although not yet determined by a New York State appellate court, a federal case applying New York's anti-SLAPP statute has determined that social media platforms, such as Facebook, constitute a "public forum" (see Coleman v Grand, 523 F Supp 3d 244, 266 [ED NY] [Facebook is a public forum within the meaning of New York's anti-SLAPP law]). California courts, when applying their state's anti-SLAPP statute, which is similar to New York's anti-SLAPP statute in language and intent, have followed an almost 20-year precedent in that state that all "[w]eb sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute" (Barrett v Rosenthal, 40 Cal 4th 33, 41 n 4, 146 P3d 510, 514; see Huntingdon Life Sciences, Inc. v Stop Huntingdon Animal Cruelty USA, Inc., 129 Cal App 4th 1228, 1247, 29 Cal Rptr 3d 521, 536). In that 20-year period, the protections of that anti-SLAPP statute have been extended to written content shared through the internet platforms of LinkedIn, Slack, and GoFundMe (see Prehired, LLC v Provins, 2023 WL 2717509 *6, 2023 US Dist LEXIS 55275, *16-17 [ED Cal, No. 2:22-cv-00384-DAD-AC]), Twitter (see Penrose Hill, Ltd. v Mabray, 479 F Supp 3d 840, 854 [ND Cal 2020]), and, as relevant here, Facebook (see Cross v Facebook, Inc., 14 Cal App 5th 190, 199, 222 Cal Rptr 3d 250, 258). Those decisions have all rested upon findings that postings on those sites constitute statements made in a "public forum in connection with an issue of public interest" for the purposes of California's anti-SLAPP statute (Cal Civ Proc § 425.16[2][e][3]). Notably, in Cross v Facebook, Inc. (14 Cal App 5th at 199, 222 Cal Rptr 3d at 258), the California appellate state court observed that "Facebook pages . . . are 'public forums,' as they are accessible to anyone who consents to Facebook's Terms." Courts in Nevada and Connecticut, when interpreting their state's similar anti-SLAPP statutes have likewise determined that Facebook is a public forum under their respective statutes (see Stark v Lackey, 136 Nev 38, 42, 458 P3d 342, 346; Cevetillo v Lang, 2019 WL 7597451, *5, 2019 Conn Super LEXIS 3353, *9-10 [Conn Super Ct, No. CV196031687]). Based upon the intent of the Legislature to redefine New York's anti-SLAPP statute as broadly as possible, and the interpretation in decisions by other state courts of their similar state anti-SLAPP statutes defining Facebook and other social media applications as public forums, we conclude that Facebook is a public forum within the meaning of Civil Rights Law § 76-a(1).
Nonetheless, contrary to the defendants' contentions, this action is not subject to the anti-SLAPP statute because the defendants' statements published on the plaintiff's Facebook page concerned "a purely private matter" (id. § 76-a[1][d]; see § 76-a[1][a]) and were "directed only to a limited, private audience" (Huggins v Moore, 94 NY2d 296, 303). Although the defendants made generic reference to issues of broad public interest, their primary focus was not an issue of broad public interest. Here, the defendants commented not on a community post, but rather on a post related to the birthday of the plaintiff's daughter (see Miller v Appadurai, 214 AD3d 455, 456; Balliet v Kottamasu, 76 Misc 3d 906, 922, affd 81 Misc 3d 132[A], 2023 NY Slip Op 51297[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists]). The statements here were private allegations of the plaintiff's alleged crimes. The record shows that the defendants made these statements on what [*4]was a limited personal Facebook post concerning the birthday of the plaintiff's daughter and not on a forum of broader scope. Under these circumstances, the content of the challenged statements was not within the sphere of public interest (see Miller v Appadurai, 214 AD3d at 456).
Accordingly, the Supreme Court properly denied that branch of the defendants' motion which was pursuant to CPLR 3211(a)(7) and (g) to dismiss the first cause of action, alleging defamation per se.
The defendants' remaining contentions are without merit.
Accordingly, we affirm the order insofar as appealed from.
DUFFY, J.P., CHRISTOPHER and FORD, JJ., concur.
ORDERED that the order is affirmed insofar as appealed from, with costs.
ENTER:
Darrell M. Joseph
Clerk of the Court