137 Nev., Advance Opinion 44

IN THE SUPREME COURT OF THE STATE OF NEVADA

|  |  |
|---|---|
| DAPHNE WILLIAMS,<br>Appellant,<br>vs.<br>CHARLES "RANDY" LAZER,<br>Respondent. | No. 80350<br><br>**FILED**<br><br>SEP 16 2021<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Appeal from a district court order denying an anti-SLAPP special motion to dismiss. Eighth Judicial District Court, Clark County; Joseph Hardy, Jr., Judge.

*Reversed and remanded with instructions.*

Randazza Legal Group, PLLC, and Marc J. Randazza and Alex J. Shepard, Las Vegas,
for Appellant.

TRILAW and Adam R. Trippiedi, Henderson,
for Respondent.

American Civil Liberties Union Foundation and Arianna Marie Demas, New York, New York; American Civil Liberties Union of Nevada and Nicole C. Levy, Las Vegas,
for Amici Curiae American Civil Liberties Union Foundation and American Civil Liberties Union of Nevada.

Law Offices of Clyde DeWitt and Clyde F. DeWitt, Las Vegas,
for Amicus Curiae First Amendment Lawyers Association.

BEFORE THE SUPREME COURT, EN BANC.

21-26860

*OPINION*

By the Court, CADISH, J.:

This appeal presents issues concerning the scope of Nevada's anti-SLAPP statutory protections, including what the defendant must show to meet the statute's good faith standard for protected speech, how the statute works with common law-based privileges, and what is required of the plaintiff in terms of showing a probability of prevailing on the merits of his claim in order to proceed. After respondent threatened to sue appellant over a text message that he perceived as defamatory, appellant filed a complaint with the Nevada Real Estate Division (NRED), alleging that respondent acted unprofessionally and unethically in a real estate matter. Respondent filed the underlying tort complaint based on appellant's NRED complaint. Appellant, claiming that the anti-SLAPP statute and absolute litigation privilege protected her from liability, moved to dismiss. The district court denied the motion, concluding that the statements did not meet the good faith standard for protected speech, the litigation privilege did not necessarily apply, and respondent showed a probability of prevailing on the merits of his claims.

On this record, we conclude that appellant met the good faith standard under the anti-SLAPP framework because her statements were either opinions, were truthful, or were made without knowledge of their falsehood, as supported by her sworn affidavit. We further conclude that the absolute litigation privilege applies at the second prong of the anti-SLAPP analysis and that an NRED proceeding is quasi-judicial for purposes of the privilege. As appellant's statements meet the requirements for anti-SLAPP protection and the absolute litigation privilege applies such that respondent cannot prevail on his claims, we reverse.

 

*FACTS AND PROCEDURAL HISTORY*

Appellant Daphne Williams, an African-American woman, agreed to purchase a condominium that she was renting from the property owner. Respondent, Charles "Randy" Lazer, a licensed real estate professional, represented the seller in the sale, and Williams acted without an agent. Williams and Lazer had communication problems during the transaction, and after delays in closing, Williams sent Lazer a text stating that she was contemplating filing a complaint with the NRED regarding what she perceived as Lazer's racist, sexist, and unprofessional behavior. Lazer responded to the text by contacting NRED, the seller, Williams's mortgage lender Bryan Jolly,[1] an attorney, and another real estate professional to explain his perception of what occurred. Further, after the sale closed, Lazer sent a demand letter to Williams seeking several thousand dollars and an apology in exchange for not filing a tort action against her based on the text message she sent only to him.

Williams refused the demand and subsequently filed an NRED complaint, alleging that Lazer (1) "displayed unethical, unprofessional, racist and sexist behavior" during the transaction; (2) inappropriately shared confidential information with her about his personal relationship with the seller; (3) contacted the appraiser before the appraisal, which she believed was unethical based on a conversation she had with an NRED employee; (4) falsely claimed that Williams would not allow the seller's

---

[1]During his email exchange with Jolly, who is African-American, Lazer stated that he "play[s] and write[s] jazz, which is truly at the very heart of black/African culture, and [Lazer] ha[s] an incredible love and respect for that." Lazer also stated that no person had ever accused him of being racist in any prior real estate deal.

movers to enter the condominium to remove the seller's property and that Williams caused delays in closing; (5) failed to send her a fully executed copy of the signed purchase agreement; and (6) had the seller call Williams to encourage her to apologize to Lazer for her text message.[2]

Lazer then filed the underlying complaint, alleging defamation, negligence, business disparagement, and intentional infliction of emotional distress. Williams filed an anti-SLAPP special motion to dismiss, arguing that the statements contained in her NRED complaint were protected "good faith communication[s] in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." She further argued that her statements were truthful, were made without knowledge of their falsehood, or were opinions, and they were otherwise privileged because they were made in the context of judicial proceedings, such that Lazer could not show a probability of prevailing on his claims. Specifically, as to common law privilege, she argued that NRED is a quasi-judicial body and thus the absolute litigation privilege protects statements made in her NRED complaint. Regardless, she argued, Lazer failed to show minimum merit to his claims.

In opposing the motion, Lazer argued that the anti-SLAPP statutes did not protect Williams's statements because she knew they were false when she made them and he made a prima facie showing of a probability of prevailing on his claims. As to the absolute litigation privilege, he argued that (1) Nevada law does not support that the privilege protects an NRED complaint and public policy justifying applying the

---

[2]According to Williams, during that phone call, the seller stated that she did not "know why [Lazer] is trying to sabotage this deal."

privilege to complaints against police officers did not apply to realtors, (2) NRED is not a judicial body, and (3) it was unclear if NRED even contemplated engaging in a quasi-judicial proceeding against Lazer.

The district court denied Williams's anti-SLAPP special motion to dismiss, concluding that she failed to show that she made her statements in good faith, i.e., that they were truthful or made without knowledge of their falsity, but that even if she did, Lazer showed a probability of prevailing on his claims. The court of appeals affirmed. *Williams v. Lazer*, Docket No. 80350-COA (Order of Affirmance, Nov. 25, 2020). Williams filed a petition for review, which we granted.

## DISCUSSION

We review de novo a decision to grant or deny an anti-SLAPP special motion to dismiss. *Rosen v. Tarkanian*, 135 Nev. 436, 438, 453 P.3d 1220, 1222 (2019). A court must grant an anti-SLAPP special motion to dismiss where (1) the defendant shows, by a preponderance of the evidence, that the claim is based on a "good faith communication in furtherance of . . . the right to free speech in direct connection with an issue of public concern" and (2) the plaintiff fails to show, with prima facie evidence, a probability of prevailing on the claim. NRS 41.660(3).

*Williams satisfied her burden under the first prong of the anti-SLAPP analysis*

Williams argues that her statement that Lazer was racist, sexist, unprofessional, and unethical is a non-actionable opinion and that either her remaining factual statements are true or Lazer failed to provide evidence that Williams knew the statements were false when she made them. We agree.

To satisfy the first prong of the anti-SLAPP special motion to dismiss analysis, the defendant must show that (1) "the comments at issue

fall into one of the four categories of protected communications enumerated in NRS 41.637" and (2) the communication is made in good faith in that it is "truthful or is made without knowledge of its falsehood." *Stark v. Lackey*, 136 Nev. 38, 40, 458 P.3d 342, 345 (2020) (quoting NRS 41.637). The parties do not dispute that Williams's statements fall within a protected category, i.e., that they were made in furtherance of the right to petition or right to free speech in direct connection with an issue of public concern. Thus, we address only whether Williams made the statements in good faith in order to satisfy the first prong of the anti-SLAPP analysis.

Although the district court's order did not address Williams's argument that her general allegations of racism, sexism, and unprofessional and unethical conduct in her NRED complaint were non-actionable opinions, the record supports that they were. In support of her anti-SLAPP special motion to dismiss, Williams provided a sworn declaration in which she described various problems she encountered in purchasing the condominium and working with Lazer. She stated that Lazer was consistently rude and unprofessional and she had "no doubt in [her] mind" that had she not been an African-American woman, Lazer would have treated her with greater respect and professionalism. She further stated her belief that every statement in her NRED complaint was either true or her reasoned opinion based on her experience with Lazer. Lazer concedes that Williams's allegations of racism and sexism are opinions, and although he challenges her generalized statements that he acted unethically and unprofessionally, those statements were likewise opinion-based. *See Stark*, 136 Nev. at 43, 458 P.3d at 347 (holding that a defendant's affidavit affirming her statements were true or statements of

opinion, in the absence of contradictory evidence in the record, is sufficient to show good faith).

As we have previously observed, opinion statements are incapable of being false, as "'there is no such thing as a false idea.'" *Abrams v. Sanson*, 136 Nev. 83, 89, 458 P.3d 1062, 1068 (2020) (quoting *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 714, 57 P.3d 82, 87 (2002)) (observing that statements of opinion are statements made without knowledge of their falsehood for anti-SLAPP purposes). In *Abrams*, we affirmed a district court order granting the defendant's anti-SLAPP special motion to dismiss, concluding that the challenged statements calling the attorney plaintiff unethical and criticizing her courtroom behavior and methods were expressions of the defendant's personal views and thus opinions. *Id.* at 90, 458 P.3d at 1068. We perceive no difference in Williams's generalized statements here, especially in light of her sworn declaration affirming the statements as her own opinions based on her experience with Lazer. *Id.* at 90, 458 P.3d at 1069 (concluding that the defendant's declaration and other evidence supported that the defendant was stating his beliefs and opinions, which by definition cannot be knowingly false); *see also Stevens v. Tillman*, 855 F.2d 394, 402-03 (7th Cir. 1988) (holding that neither general statements charging a person with being racist, unfair, or unjust, nor references to general discriminatory treatment, without more, constitute provably false assertions of fact); *Overhill Farms, Inc. v. Lopez*, 119 Cal. Rptr. 3d 127, 140 (Ct. App. 2010) ("We agree that general statements charging a person with being racist, unfair, or unjust . . . constitute mere name calling and do not contain a provably false assertion of fact."). As Williams's opinion-based statements cannot be knowingly false, *Abrams*,

136 Nev. at 89, 458 P.3d at 1068, we conclude that she satisfied her burden as to these statements under the first prong of the anti-SLAPP framework.

Turning to the remaining statements, Williams's declaration explained that she believed every statement she made was true as well as the basis for that belief, which, under these circumstances, is sufficient to show that her statements were truthful or made without knowledge of their falsehood. *Stark*, 136 Nev. at 43-44, 458 P.3d at 347. While Lazer provided several declarations that allege some of Williams's statements are factually wrong, such declarations do not constitute contrary evidence to refute Williams's affidavit because they do not allege, much less show, that *Williams knew* any of the statements were false when she made them. *Id.* (explaining that a defendant met her preponderance burden by providing an affidavit affirming her communications as truthful or made without knowledge of their falsehood when the record contained no evidence to the contrary); *Shapiro v. Welt*, 133 Nev. 35, 38, 389 P.3d 262, 267 (2017) (observing that a statement is made without knowledge of its falsehood if "[t]he declarant [is] unaware that the communication is false at the time it was made").

For example, Williams stated that she believed Lazer's pre-appraisal contact with the appraiser was unethical based on a conversation she had with an NRED employee who told her that a seller's agent is not supposed to make such contact. Although Lazer provided a declaration stating that such contact is permissible, that does not mean that Williams did not have a subjective belief that it was impermissible at the time she filed her NRED complaint. Moreover, the parties' declarations support that the gist of some of Williams's remaining statements, including that Lazer did not provide her with a copy of the fully executed purchase agreement

and that he falsely claimed that she refused to allow the seller to remove property from the condo, were true, and thus made in good faith. *Rosen*, 135 Nev. at 441, 453 P.3d at 1224 (holding that in determining the truthfulness of a statement, courts do not parse individual words but instead consider "whether a preponderance of the evidence demonstrates that the gist of the story, or the portion of the story that carries the sting of the [statement], is true" (alteration in original) (internal quotation marks omitted)). Accordingly, we conclude that Williams met her burden of showing that she made the remaining statements in good faith and thus satisfied her burden under the first prong of the anti-SLAPP framework.

*Lazer did not demonstrate a probability of prevailing on his claims*

Under the second prong of the anti-SLAPP analysis, Lazer had the burden of showing that his claims had at least minimal merit in order to proceed with the litigation. *Abrams*, 136 Nev. at 91, 458 P.3d at 1069.

*The absolute litigation privilege applies at the second prong of the anti-SLAPP analysis*

As a threshold matter, Williams argues that Lazer cannot meet his burden under the second prong because the absolute litigation privilege precludes any tort liability for the statements in her NRED complaint, such that Lazer's claims necessarily lack merit.[3] Lazer contends that the privilege does not apply in the second prong of the anti-SLAPP analysis because the minimal merit standard limits the court's analysis to only the evidence and argument the plaintiff presents to make a prima facie showing of probable success on his claim.

We previously acknowledged that the absolute litigation privilege may be relevant to the anti-SLAPP analysis in *Shapiro v. Welt*. In

---

[3]The record does not support Williams's waiver argument; therefore, we do not address it.

*Shapiro*, although we reversed the district court's order granting an anti-SLAPP special motion to dismiss based on its conclusion that plaintiffs could not show their claim had minimal merit because the absolute litigation privilege protected defendants' statements, we did so because the district court did not conduct the case-specific, fact-intensive analysis required to determine whether the privilege applied to the statements at issue. 133 Nev. at 36-37, 389 P.3d at 265-66. In remanding for the district court to make that determination, we implicitly acknowledged that whether the statements are subject to the privilege was relevant to the second-prong minimal merit analysis. *See id.* To the extent that *Shapiro* did not expressly and thoroughly address the issue, we now explicitly hold that the absolute litigation privilege applies at the second prong of the anti-SLAPP analysis because a plaintiff cannot show a probability of prevailing on his claim if a privilege applies to preclude the defendant's liability.[4] Such a holding is consistent with California authority, which is instructive in deciding anti-SLAPP cases. *Id.* at 39, 389 P.3d at 268 (recognizing that this court "look[s] to California law for guidance" when analyzing Nevada's anti-SLAPP statute); *see Feldman v. 1100 Park Lane Assocs.*, 74 Cal. Rptr. 3d 1, 15 (Ct. App. 2008) (holding that "[t]he litigation privilege is relevant to the second step in the anti-SLAPP analysis" (internal quotation marks omitted)).

---

[4]This holding is consistent with our prior caselaw. *Cf. Stark*, 136 Nev. at 44 n.4, 458 P.3d at 347 n.4 (instructing the district court to consider whether the Communications Decency Act, 47 U.S.C. § 230 (2012), applied during the second prong of the anti-SLAPP analysis because the CDA precludes liability where applicable and a plaintiff cannot show a probability of prevailing on his claims if a statute precludes the defendant's liability for his statements).

*Statements made in a complaint filed with NRED are subject to the absolute litigation privilege*

Williams argues that the absolute litigation privilege protects her from liability for her NRED complaint because the statements contained therein were made in the context of a quasi-judicial proceeding. Whether the absolute litigation privilege applies is a question of law reviewed de novo. *Clark Cty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 382, 213 P.3d 496, 502 (2009). We have expressly concluded that the absolute litigation privilege extends "to quasi-judicial proceedings before executive officers, boards, and commissions." *Circus Circus Hotels, Inc. v. Witherspoon*, 99 Nev. 56, 61, 657 P.2d 101, 104 (1983). A proceeding is quasi-judicial for purposes of the absolute litigation privilege if it "(1) provide[s] the opportunity to present and rebut evidence and witness testimony, (2) require[s] that such evidence and testimony be presented upon oath or affirmation, and (3) allow[s] opposing parties to cross-examine, impeach, or otherwise confront a witness." *Spencer v. Klementi*, 136 Nev. 325, 332, 466 P.3d 1241, 1247 (2020).

We conclude that an NRED proceeding initiated by a complaint from a party in a real estate transaction is quasi-judicial because it meets the criteria outlined in *Spencer*. Lazer does not dispute that on such a complaint, NRED is authorized to investigate and impose discipline. *See* NRS 645.630 (providing NRED with disciplinary authority); NRS 645.633-.635 (listing grounds for disciplinary action, including for unprofessional or improper conduct in a real estate transaction). Moreover, the real estate commission has authority to administer oaths, issue subpoenas, and serve process, and the real estate licensee against whom the complaint alleges wrongdoing may present and rebut evidence and witness testimony. *See* NRS 645.700-.730 (listing commission's powers and providing that any

SUPREME COURT
OF
NEVADA

(O) 1947A

11

party to an NRED hearing has the right to call witnesses at the hearing or upon deposition); NAC 645.810 (listing procedural requirements at a hearing, which include allowing the real estate licensee to cross-examine NRED's witnesses and call his or her own witnesses and introduce evidence). Further, NRS 645.685(1) (providing a licensee the right to file an answer to the charges) and NRS 645.760(2) (providing that a licensee is entitled to judicial review of an adverse ruling or decision) support the conclusion that an NRED proceeding is quasi-judicial because those statutes "provide[ ] basic due-process protections similar to those provided in a court of law." *Spencer*, 136 Nev. at 332, 466 P.3d at 1247 (noting that the *Spencer* factors are the "minimum" required to show a quasi-judicial proceeding).

Lazer's arguments to the contrary are unpersuasive. In particular, our precedent squarely forecloses his argument that the absolute litigation privilege cannot apply because there was no formal hearing on Williams's complaint. *See Fink v. Oshins*, 118 Nev. 428, 433, 49 P.3d 640, 644 (2002) ("[T]he privilege applies not only to communications made during actual judicial proceedings, but also to 'communications preliminary to a proposed judicial proceeding.'" (quoting *Bull v. McCuskey*, 96 Nev. 706, 712, 615 P.2d 957, 961 (1980))); *see also Lewis v. Benson*, 101 Nev. 300, 301, 701 P.2d 751, 752 (1985) (applying the absolute litigation privilege to a complaint filed with the Las Vegas Metropolitan Police Department). Also unpersuasive is his argument that the privilege does not apply here because the Legislature has not codified its application in the NRED statutes but has in the statutes governing Gaming Control Board complaints. The absolute litigation privilege is rooted in a rich body of common law as a defense to defamation and other tort claims, and courts have historically

Supreme Court
OF
Nevada

(0) 1947A

12

applied this common law privilege to statements made in a variety of quasi-judicial proceedings regardless of additional statutory authority. *See, e.g.,* *Lewis*, 101 Nev. at 301, 701 P.2d at 752 (applying the privilege to complaints filed with law enforcement); *Knox v. Dick*, 99 Nev. 514, 518, 665 P.2d 267, 270 (1983) (applying the privilege to statements made to the Clark County Personnel Grievance Board); *Cohen v. King*, 206 A.3d 188, 191 (Conn. App. Ct. 2019) (recognizing that Connecticut has long recognized the common law litigation privilege to afford absolute immunity to those providing information in connection with judicial and quasi-judicial proceedings). Accordingly, we conclude that statements made in the context of an NRED proceeding, regardless of whether it proceeds to a hearing, are subject to the absolute litigation privilege when they meet the criteria for the privilege to apply.

### *Williams filed her NRED complaint in good faith and in anticipation of future litigation*

In order for the absolute litigation privilege to apply to statements made in the context of judicial or quasi-judicial proceedings, "(1) a judicial proceeding must be contemplated in good faith and under serious consideration, and (2) the communication must be related to the litigation." *Jacobs v. Adelson*, 130 Nev. 408, 413, 325 P.3d 1282, 1285 (2014) (internal quotation marks omitted). Thus, "the privilege applies to communications made by either an attorney or a nonattorney that are related to ongoing litigation or future litigation contemplated in good faith." *Id.*

We conclude that Williams filed her NRED complaint in good faith and in relation to litigation. Because Williams's NRED complaint is a complaint in a quasi-judicial proceeding, the absolute litigation privilege applies and protects Williams's NRED complaint. *See Lewis*, 101 Nev. at

Supreme Court
OF
Nevada

(O) 1947A

301, 701 P.2d at 752 (applying the privilege to complaints filed with law enforcement). Because all of Lazer's claims derive from the allegedly defamatory statements contained in Williams's NRED complaint, which is protected by the absolute litigation privilege, we hold that he cannot show by prima facie evidence a probability of prevailing on his claims. *See Spencer*, 136 Nev. at 326, 466 P.3d at 1243 (noting that the absolute litigation privilege protects statements made during judicial or quasi-judicial proceedings and "those statements cannot form the basis of a defamation claim"); *see also Asia Invs. Co., LTD v. Borowski*, 184 Cal. Rptr. 317, 324 (Ct. App. 1982) (collecting cases applying the absolute litigation privilege to non-defamation torts like abuse of process, intentional infliction of emotional distress, slander of title, and intentional interference with prospective business advantage).

## CONCLUSION

The record demonstrates that Williams's statements either were opinions incapable of being knowingly false, were true, or were not knowingly false. Lazer's declarations asserting that Williams's statements were factually false are insufficient to show that she made the statements in bad faith because his declarations do not show that she knew the statements were false when she made them. The district court thus erred in determining that Williams did not meet her burden under the first prong of the anti-SLAPP analysis. Further, statements made in an NRED complaint are subject to the absolute litigation privilege, as proceedings before the real estate commission are quasi-judicial, and whether the privilege applies to particular statements is relevant to the second prong of the anti-SLAPP analysis because a plaintiff cannot prevail on defamation-based claims and related torts if the privilege applies. Under the facts here,

the absolute litigation privilege protects Williams's NRED complaint because the complaint itself initiated a quasi-judicial proceeding. Accordingly, the district court erred in concluding that Lazer demonstrated a probability of prevailing on his defamation claims. Therefore, we reverse the district court's order denying Williams's anti-SLAPP special motion to dismiss and remand with instructions that the district court grant the motion.

_____, J.
Cadish

We concur:

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Silver

_____, J.
Pickering

_____, J.
Herndon

Supreme Court
of
Nevada

(O) 1947A