142 Nev., Advance Opinion 36

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| ERIC ROSENBROOK AND LEIDA MARGARETHA, Appellants, vs. TRENA SHARRELL LLOYD, AN INDIVIDUAL; SHARRELL'S WORLD, LLC, A NEVADA LIMITED LIABILITY COMPANY; AND WILLIAM M. LLOYD, AN INDIVIDUAL, Respondents. | No. 84452 **FILED** MAY 14 2026 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY _____ CHIEF DEPUTY CLERK |
| ERIC ROSENBROOK AND LEIDA MARGARETHA, Appellants, vs. TRENA SHARRELL LLOYD, AN INDIVIDUAL; SHARRELL'S WORLD, LLC, A NEVADA LIMITED LIABILITY COMPANY; AND WILLIAM M. LLOYD, AN INDIVIDUAL, Respondents. | No. 85175 |

Consolidated appeals from a district court order granting a special motion to dismiss a tort action under NRS 41.660 and a post-judgment order awarding attorney fees. Eighth Judicial District Court, Clark County; Nadia Krall, Judge.

*Affirmed in part, reversed in part, and remanded (Docket No. 84452); reversed and remanded (Docket No. 85175).*

Frizell Law Firm, PLLC, and R. Duane Frizell, Henderson, for Appellants.

 

Gordon Rees Scully Mansukhani, LLP, and Robert E. Schumacher and Thierry V. Barkley, Las Vegas,
for Respondents.

---

BEFORE THE SUPREME COURT, PARRAGUIRRE, BELL, and STIGLICH, JJ.

*OPINION*

By the Court, PARRAGUIRRE, J.:

Nevada's anti-SLAPP statutes, NRS 41.635-.670, are meant to protect against unmeritorious claims and retaliatory lawsuits based on the exercise of the right to free speech under the Nevada and United States Constitutions. But we have held this laudable purpose does not require the dismissal of a complaint "in its entirety where it contains claims arising from both protected and unprotected communications." *Abrams v. Sanson*, 136 Nev. 83, 91, 458 P.3d 1062, 1069 (2020). Thus, when deciding an anti-SLAPP special motion to dismiss, each challenged claim must be reviewed independently. *Id.* We take the opportunity to clarify our holding in *Abrams* compelling trial courts to first review each challenged statement independently under the first prong of the anti-SLAPP analysis to determine whether the alleged statement is protected communication. The burden-shifting second prong of the anti-SLAPP analysis is only employed as to protected communications that satisfy the requirements of the first prong.

As defendants in the underlying action did not satisfy their burden under the first prong of the anti-SLAPP analysis with respect to some of the communications alleged in the defamation and conspiracy

claims at issue, the district court erred in granting defendants' anti-SLAPP motion in its entirety. Since defendants did, however, meet their burden under the first prong as to some of the communications, and plaintiffs failed to meet their burden under the second prong, the district court properly granted the motion in part. Given defendants' partial success, we also clarify how the district court is to determine the extent to which statutory attorney fees are warranted. Ultimately, we affirm in part and reverse in part the order granting the anti-SLAPP motion and necessarily reverse the district court's order awarding attorney fees.

## FACTS AND PROCEDURAL HISTORY

Appellants/plaintiffs Eric Rosenbrook and Leida Margaretha (collectively, the Rosenbrooks) are a married couple who met on the set of *90 Day Fiancé*, a reality television series. The Rosenbrooks operate a YouTube channel. Respondent/defendant Trena Sharrell Lloyd also operates a YouTube channel—*Sharrell's World*—which is owned by respondent/defendant Sharrell's World, LLC. Trena's husband, respondent/defendant William M. Lloyd, aka Perry Sanders, occasionally appears as a guest on *Sharrell's World*. The channel focuses on reality television, with Trena and guests discussing news and gossip related to that topic. At times, those discussions focused on the Rosenbrooks.

Based on specific comments made on *Sharrell's World*, the Rosenbrooks sued respondents/defendants (collectively, the Lloyds), alleging defamation and civil conspiracy claims.[1] Almost six months after

---

[1]The Rosenbrooks also sued John Yates, who operates his own YouTube channel and appeared on *Sharrell's World* at least once where they discussed the Rosenbrooks. The record reflects that Yates was not properly served process and never appeared in the proceedings below. After the Rosenbrooks appealed, this court entered an order removing Yates from

SUPREME COURT
OF
NEVADA

(O) 1947A

3

the action commenced, and just over a month after the Rosenbrooks amended their complaint, the Lloyds moved to dismiss the amended complaint under NRS 41.660's anti-SLAPP provisions. After a hearing, the district court granted that motion in its entirety. The Rosenbrooks appealed from the dismissal order in Docket No. 84452.

The district court later granted in part and denied in part the Lloyds' motion for attorney fees and costs. The district court denied the motion as to costs and prejudgment interest but found that the requested fees were reasonable and supported under the *Brunzell* factors and thus awarded attorney fees.[2] The Rosenbrooks also appealed that order in Docket No. 85175, which is consolidated with Docket No. 84452.

## DISCUSSION

The Rosenbrooks raise several issues. First, they argue that the anti-SLAPP motion was untimely. Second, they challenge the district court's conclusions on both prongs of the anti-SLAPP analysis. Finally, they argue that the district court erred in awarding the Lloyds attorney fees. The denial of an anti-SLAPP special motion to dismiss is reviewed de novo. *See Rosen v. Tarkanian*, 135 Nev. 436, 438, 453 P.3d 1220, 1222 (2019).

*The Rosenbrooks waived any argument that the anti-SLAPP motion was untimely*

As a threshold matter, the Rosenbrooks argue that the Lloyds' anti-SLAPP motion was untimely because it was filed 115 days after the original complaint was served. They rely on NRS 41.660(2), which provides

---

the caption on this basis. *See Rosenbrook v. Lloyd*, Nos. 84452 & 85175 (Nev. Sep. 9, 2022) (Order Modifying Caption and Granting Motions).

[2]*Brunzell v. Golden Gate Bank*, 85 Nev. 345, 349-50, 455 P.2d 31, 33 (1969).

that "[a] special motion to dismiss must be filed within 60 days after service of the complaint, which period may be extended by the court for good cause shown." We decline to entertain this issue because the Rosenbrooks failed to raise it below and a challenge to timeliness under NRS 41.660 is not jurisdictional. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal."); *Kassebaum v. State, Dep't of Corr.*, 139 Nev. 311, 313-14, 535 P.3d 651, 654-55 (2023) (clarifying the difference between jurisdictional rules, which "go to the very power of [the] court to act," and claim-processing rules, which "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times").

*The district court partially erred by granting the Lloyds' anti-SLAPP motion*

The Rosenbrooks argue the district court erred under the first prong of the anti-SLAPP analysis by finding that the statements identified in the amended complaint were truthful, were made without knowledge of their falsehood, or were opinions incapable of being false.[3] The Rosenbrooks further argue that they demonstrated a probability of prevailing on the defamation and conspiracy claims, as required to satisfy the second prong of the anti-SLAPP analysis.

---

[3]The Rosenbrooks suggest the Lloyds' statements were per se defamatory and that such statements are not protected by the anti-SLAPP statutes. But this court has never held that the anti-SLAPP statutes do not apply to per se defamatory statements. Further, the Rosenbrooks' reliance on *Weinberg v. Feisel*, 2 Cal. Rptr. 3d 385 (Ct. App. 2003), is misplaced. *Weinberg* directs courts to look to the nature of the communication and determine whether it is protected; it does not categorically exempt per se defamatory statements from anti-SLAPP protection. *See id.* at 388.

Under NRS 41.660, the district court applies a two-prong analysis in determining whether to grant an anti-SLAPP special motion to dismiss. *Stark v. Lackey*, 136 Nev. 38, 40, 458 P.3d 342, 345 (2020). First, the court must "[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." *Id.* (quoting NRS 41.660(3)(a)). If the moving party meets its burden, the district court advances to step two, where the court must determine whether the plaintiffs demonstrated, with prima facie evidence, a probability of prevailing on their claims. *Id.*; NRS 41.660(3)(b); *Smith v. Zilverberg*, 137 Nev. 65, 67, 481 P.3d 1222, 1227 (2021). If, however, the moving party fails to meet its burden under the first prong, "the court need not evaluate step two." *Spirtos v. Yemenidjian*, 137 Nev. 711, 714, 499 P.3d 611, 616 (2021).

*Four statements did not survive scrutiny under the first prong of the anti-SLAPP analysis*

The Rosenbrooks conceded below that the communications at issue were "made in direct connection with an issue of public interest" and made "in a place open to the public or in a public forum." NRS 41.637(4) (defining good faith communications). They do not argue otherwise on appeal. Thus, with respect to the first prong of the anti-SLAPP analysis, we address only whether the communications were made "in good faith in that [they were] truthful or [were] made without knowledge of [their] falsehood," *Williams v. Lazer*, 137 Nev. 437, 440, 495 P.3d 93, 97 (2021) (citation modified), or were statements of opinion that "cannot be false," *Zilverberg*, 137 Nev. at 69, 481 P.3d at 1228.

The claims in the amended complaint are based on a number of alleged communications. This court has not addressed whether a defendant

must satisfy the first prong of the anti-SLAPP analysis as to all the communications alleged in support of a claim. We have, however, held that each challenged claim "must [be] review[ed] . . . independently" to determine a plaintiff's probability of prevailing under the second prong. *Abrams*, 136 Nev. at 91, 458 P.3d at 1069. In that context, this court has observed that the purpose of the anti-SLAPP statutes is best served when a complaint is not "dismissed in its entirety where it contains claims arising from both protected and unprotected communications." *Id.* We now extend this reasoning to the review required under the first prong of the anti-SLAPP analysis with respect to the factual bases for the claims (i.e., whether the communications are protected). As the California Supreme Court has explained, where a "singular cause of action alleges multiple factual bases," the moving party's "burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." *Bonni v. St. Joseph Health Sys.*, 491 P.3d 1058, 1066 (Cal. 2021). Doing so requires independent review of each separate communication.

The Lloyds failed to meet their burden under the first prong of the anti-SLAPP analysis as to four statements alleged in the amended complaint. The first such statement is that Eric and Leida "used a 'Go Fund Me' account for their own personal interests" rather than giving the funds to a different cast member on *90 Day Fiancé*. Given its specificity, a reasonable person would likely interpret the statement as one of existing fact because it suggests that the Lloyds knew this to be true or "impl[ies] that facts exist which will be sufficient to render the message defamatory if false." *Wynn v. Smith*, 117 Nev. 6, 17, 16 P.3d 424, 431 (2001) (holding that the test for whether such expressions of opinion are statements of fact is

Supreme Court
of
Nevada

(O) 1947A

7

"whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact"). This statement suggests that the Rosenbrooks committed financial fraud. But the evidence included with the Lloyds' anti-SLAPP motion does not support any such assertion of fraud. Thus, the Lloyds failed to demonstrate by a preponderance of the evidence that "the gist of the story . . . is true." *Rosen*, 135 Nev. at 441, 453 P.3d at 1224. The fact that the Rosenbrooks have been painted in a negative light on various public forums does not preclude the Lloyds' statement from being defamatory if false. *See Lubin v. Kunin*, 117 Nev. 107, 111, 17 P.3d 422, 425 (2001) (holding that whether a statement is defamatory depends on the entirety of the statement and the context of its use); *Posadas v. City of Reno*, 109 Nev. 448, 453, 851 P.2d 438, 442 (1993) (holding that "[a] statement is defamatory when, under any reasonable definition, such charges would tend to lower the subject in the estimation of the community and to excite derogatory opinions against him and to hold him up to contempt" (citation modified)).

The second instance where the Lloyds failed to meet their burden is with respect to the statement that Eric called William the "N-word." The statement essentially alleges that Eric is a racist or has made racist comments. General statements that a person is racist, or references to general discriminatory treatment, do not constitute provably false assertions of fact. *See Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988). Nor is there any per se rule affording anti-SLAPP protection to more specific accusations of racist behavior. *See MacElree v. Phila. Newspapers, Inc.*, 674 A.2d 1050, 1055 (Pa. 1996) ("[I]t cannot be said that every [racist] accusation is not capable of defamatory meaning as a matter of law."). Here, the statement goes beyond general accusations to make a specific allegation

that Eric made a discriminatory remark about William. That specific accusation would adversely impact the community's view of Eric and could potentially excite derogatory opinions and contempt, particularly as it pertains to a member of the armed forces. *See Lubin*, 117 Nev. at 111, 17 P.3d at 425; *Posadas*, 109 Nev. at 453, 851 P.2d at 442. The Lloyds failed to demonstrate that this alleged statement is true or was made without knowledge of its falsehood. *Williams*, 137 Nev. at 440, 495 P.3d at 97.

The final two statements at issue are that Leida "killed three (3) people in Indonesia" and that "she enjoys killing people." A reasonable person "would be likely to understand the remark . . . as a statement of existing fact," not an opinion, which is "sufficient to render the [statement] defamatory if false." *Wynn*, 117 Nev. at 17, 16 P.3d at 431. Here, the evidence provided does not demonstrate by a preponderance of the evidence that the substance of these statements was truthful or that the statements were made without knowledge of their falsity. *See Rosen*, 135 Nev. at 441, 453 P.3d at 1224. While the Lloyds included two unsourced articles alluding to "*rumors* [Leida] was involved in a deadly street racing accident in Indonesia" and "stories [that] Leida . . . allegedly killed two people AND her unborn child while illegally street racing while pregnant in Japan," they did not provide any evidence to substantiate those statements. Thus, the Lloyds did not satisfy their burden under the first prong of the anti-SLAPP analysis with respect to these statements.

Because the Lloyds failed to meet their burden under the first prong as to those four statements, we need not analyze those statements under the second prong. *Spirtos*, 137 Nev. at 714, 499 P.3d at 616. Therefore, we reverse the district court's order to the extent it granted the

anti-SLAPP motion to dismiss as to the claims based on those four statements.

*The Lloyds met their burden under the first prong as to the remaining statements alleged in the Rosenbrooks' amended complaint*

As discussed above, although the Lloyds failed to meet their burden under the first prong regarding four key statements, a majority of the remaining alleged statements discussing the Rosenbrooks in unfavorable terms constitute statements of opinion (e.g., Leida was "gonna be deported and should be"; Eric was a "weak, spineless, coward"). Because statements of opinion cannot be false, the Lloyds met their burden under the first prong as to any such statements of opinion. *See Zilverberg*, 137 Nev. at 69, 481 P.3d at 1228.

Several other statements alleged in support of the defamation and conspiracy claims were determined to be made in good faith. These include the Lloyds' statements that Eric committed a felony by recording a conversation with William and publishing it and asking why Eric would end his military career with a felony. In his declaration, William stated it was his understanding that Eric's actions constituted a felony as a matter of law in Wisconsin, because under Wisconsin law, a person needs the recorded party's consent to publish a recording "on the air." That declaration supports that these statements were either truthful or made without knowledge of their falsehood. *See Williams*, 137 Nev. at 441, 495 P.3d at 97-98 (concluding that sworn declarations are relevant in determining whether the declarant believed the allegedly defamatory statements were true); *Shapiro v. Welt*, 133 Nev. 35, 38, 389 P.3d 262, 267 (2017) (observing that a statement is made without knowledge of its falsehood if "[t]he declarant [is] unaware that the communication is false at the time it was made").



Additional alleged statements that were also determined to be made in good faith include statements by Trena to the effect that Eric was "creating a platform in which people are promoting hatred and calling [William] . . . [the n-word]." In her declaration, Trena states that she posted a YouTube video explaining how the Rosenbrooks hosted a live video on their YouTube channel where people made derogatory remarks about William. Another posted video included a screenshot of a chat involving the Rosenbrooks where some commentators noted that others were referring to William using the same derogatory statement, as well as the Rosenbrooks' immediate reactions. This communication lends support for the Lloyds' argument and demonstrates that "the gist of the story, or the portion of the story that carries 'the sting' of the [statement], is true." *Rosen*, 135 Nev. at 441, 453 P.3d at 1224 (quoting *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 715 n.17, 57 P.3d 82, 88 n.17 (2002)). Considering this and Trena's sworn declaration, we conclude the Lloyds met their burden of demonstrating that these statements were either truthful or made without knowledge of their falsehood. *See Williams*, 137 Nev. at 441, 495 P.3d at 97-98. Accordingly, the Lloyds met their burden under the first prong as to these statements.

In sum, we conclude that the Lloyds met their burden under the first prong of the anti-SLAPP analysis as to all but the four statements identified in the amended complaint, which are addressed above. We therefore proceed to analyze the surviving statements under the second prong.

*The Rosenbrooks failed to meet their burden under the second prong as to the protected communications*

Under the second prong of the anti-SLAPP analysis, the Rosenbrooks must prove, by prima facie evidence, a probability of prevailing

on their claims for defamation and conspiracy. *See* NRS 41.660(3)(b). We have held that under this prong, the plaintiff must "show that [the] claim has at least 'minimal merit.'" *Wynn v. Associated Press*, 140 Nev., Adv. Op. 56, 555 P.3d 272, 278 (2024) (quoting *Abrams*, 136 Nev. at 91, 458 P.3d at 1069). "Minimal merit exists when the plaintiff makes 'a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" *Id.* (quoting *Wilson v. Parker, Covert & Chidester*, 50 P.3d 733, 739 (Cal. 2002)).

### The defamation claim

We first address the defamation claim. The Rosenbrooks do not challenge the district court's finding that they are public figures, and thus, they were required to make a prima facie showing (1) that the Lloyds' statements were false and defamatory, (2) that there was an unprivileged publication to a third party, (3) of fault, (4) of actual or presumed damages, and (5) of actual malice. *Zilverberg*, 137 Nev. at 70-71, 481 P.3d at 1229. Actual malice in this context means the statement was made with "knowledge that it was false or with reckless disregard of whether it was false or not." *Pegasus*, 118 Nev. at 719, 57 P.3d at 90 (citation modified). As to that element, the Rosenbrooks' burden under the second prong of the anti-SLAPP analysis requires "evidence [that] is sufficient for the jury, *by clear and convincing evidence*, to infer that the publication was made with actual malice." *Wynn*, 140 Nev., Adv. Op. 56, 555 P.3d at 278 (explaining that "a public figure defamation claim does not have minimal merit, as a matter of law, if the plaintiff's evidence of actual malice would not be sufficient—even if credited—to sustain a favorable verdict under the clear and convincing standard").

The first element of a defamation claim (that a statement was false and defamatory) cannot be met when it comes to a statement of

opinion. *See Pegasus*, 118 Nev. at 714, 57 P.3d at 87 (holding that statements of opinion cannot be defamatory). The Rosenbrooks failed to meet their burden under the second prong to the extent that the defamation claim is based on the Lloyds' alleged statements amounting to an opinion.

The Rosenbrooks' defamation claim also points to other statements that, as we have already explained, are not statements of opinion but on which the Lloyds demonstrated a good faith belief in their truthfulness or that they were made without knowledge of their falsehood. We conclude that as to those statements, the Rosenbrooks failed to make a prima facie showing of actual malice.

As previously noted, William's statements related to Eric allegedly committing a felony under Wisconsin law by publishing a privately recorded conversation between the two of them are deemed to have been made in good faith. In his sworn declaration, William stated that he never consented to being recorded by Eric or to allowing Eric to publish their private conversation. William further stated that he believed Eric recorded the conversation with the intent to benefit financially, to publish private information, and to portray William in a false light. William also stated that it was his understanding that such conduct constitutes a felony under Wisconsin law. Wisconsin is a "single-party consent" state for purposes of recording conversations. *See generally* Wis. Stat. Ann. 968.31. It criminalizes the recording and publication of a conversation with intent to commit a tortious act, such as a public disclosure of private facts. Wis. Stat. Ann. 968.31(2)(c). To the extent that William's interpretation of Wisconsin law was incorrect, the Rosenbrooks failed to provide any evidence that William *knew* that his statements were false or that they were made with reckless disregard for the truth. *Pegasus*, 118 Nev. at 719, 57 P.3d at

SUPREME COURT
OF
NEVADA

(O) 1947A

13

90. Thus, the Rosenbrooks failed to meet their burden of providing "evidence [that] is sufficient for the jury, *by clear and convincing evidence,* to infer that the publication was made with actual malice." *Wynn*, 140 Nev., Adv. Op. 56, 555 P.3d at 278.

The next communications we address involve Trena's statements related to the Rosenbrooks "promoting hatred." Given the evidence provided, the Rosenbrooks failed to meet their burden of demonstrating that Trena made such statements with actual malice, i.e., knowing they were "false or with reckless disregard of whether [they were] false or not." *Pegasus*, 118 Nev. at 719, 57 P.3d at 90 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). Thus, the Rosenbrooks failed to make a prima facie showing to satisfy the second prong under the anti-SLAPP analysis, and therefore, those alleged statements cannot support a defamation claim.

*The conspiracy claim*

We next address the Rosenbrooks' conspiracy claim. Because that claim is derivative of the defamation claim, we conclude that the Rosenbrooks failed to meet their burden under the second prong to the extent the claim is based on the statements for which the Lloyds met their burden under the first prong. The Rosenbrooks' conspiracy claim survives, however, to the extent it is based on the four alleged statements for which the Lloyds did not meet their burden under the first prong.[4] *Cf. Jordan v.*

---

[4]Additionally, as to statements attributable to John Yates, a nonparty to this appeal, we reject the Rosenbrooks' argument that the Lloyds should be jointly and severally liable for his statements as part of the Rosenbrooks' civil conspiracy claim, as they cite no relevant authority and raise this issue for the first time in their reply brief. *See Khoury v. Seastrand*, 132 Nev. 520, 530 n.2, 377 P.3d 81, 88 n.2 (2016) (holding that this court need not

*State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 121 Nev. 44, 75, 110 P.3d 30, 51 (2005) (explaining that "an underlying . . . fraud [claim] is a necessary predicate to . . . conspiracy to defraud"), *overruled on other grounds by Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228 n.6, 181 P.3d 670, 672 n.6 (2008).

In sum, we conclude that under the first prong, the district court erred by dismissing the Rosenbrooks' amended complaint as to the four identified statements for which the Lloyds failed to meet their burden. Accordingly, on remand, the district court shall proceed in the regular course as to the Rosenbrooks' defamation and conspiracy claims based on those statements. Additionally, we conclude that the district court did not err by dismissing the Rosenbrooks' defamation and conspiracy claims based on the remaining statements alleged in the amended complaint because the Rosenbrooks failed to meet their burden under the second prong of the anti-SLAPP analysis. Finally, given that the Lloyds only partially prevailed on their anti-SLAPP motion to dismiss, we next address whether the district court erred by awarding them attorney fees.

*The district court must reconsider the attorney fee award on remand*

The Rosenbrooks challenge the award of attorney fees, arguing that the Lloyds are not entitled to attorney fees because the district court erred in granting their anti-SLAPP motion in its entirety. We "generally review[ ] a district court's decision [to] . . . award attorney fees for an abuse of discretion." *Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 80, 319 P.3d

---

address issues raised for the first time in a party's reply brief); *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (holding that this court need not consider arguments not cogently argued or supported by relevant authority).

606, 615 (2014). But when "the decision implicates a question of law," our review is de novo. *Id.* at 82, 319 P.3d at 616.

NRS 41.670 governs awards of attorney fees in connection with anti-SLAPP motions. Subsection 1(a) provides that if the court grants an anti-SLAPP motion, "[t]he court shall award reasonable costs and attorney's fees to the person against whom the action was brought." Subsection 2 provides that if the court denies an anti-SLAPP motion and "finds that the motion was frivolous or vexatious," the court must "award to the prevailing party reasonable costs and attorney's fees incurred in responding to the motion." The statute does not explicitly address an award of attorney fees where a defendant only partially succeeds on an anti-SLAPP motion, which is the case here, given our decision.

We have yet to address this issue, but California courts have considered it with respect to a similar statute. *Compare* NRS 41.670, *with* Cal. Civ. Proc. Code § 425.16(c)(1). California courts have held that "a party need not succeed in striking every challenged claim to be considered a prevailing party." *Mann v. Quality Old Time Serv., Inc.*, 42 Cal. Rptr. 3d 607, 614 (Ct. App. 2006). As explained by the California Court of Appeal, a holding otherwise "would create a strong disincentive for a defendant to bring the motion, undermining the legislative intent to encourage defendants to utilize the anti-SLAPP procedure to eliminate SLAPP claims and to discourage plaintiffs from bringing meritless SLAPP claims." *Id.* But that court also observed that, as a practical matter, "there is no reason to encourage a defendant to bring an anti-SLAPP motion where the factual and legal grounds for the claims against the defendant remain the same after the resolution of the anti-SLAPP motion." *Id.* Thus, the court reasoned that "[w]here the results of the motion are minimal or

insignificant a court does not abuse its discretion in finding the defendant was not a prevailing party." *Id.* (citation modified).

When considering an award of attorney fees based on a partially successful anti-SLAPP motion, California courts first determine "the lodestar amount for the hours expended on the successful claims, and, if the work on the successful and unsuccessful causes of action was overlapping, the court should then consider the defendant's relative success on the motion in achieving his or her objective, and reduce the amount if appropriate." *Malin v. Singer*, 159 Cal. Rptr. 3d 292, 309 (Ct. App. 2013) (quoting *Mann*, 42 Cal. Rptr. 3d at 618). Relevant factors include "the extent to which the defendant's litigation posture was advanced by the motion, whether the same factual allegations remain to be litigated, whether discovery and motion practice have been narrowed, and the extent to which future litigation expenses and strategy were impacted by the motion." *Id.* "The fees awarded to a defendant who was only partially successful on an anti-SLAPP motion should be commensurate with the extent to which the motion changed the nature and character of the lawsuit in a practical way." *Id.* (quoting *Mann*, 42 Cal. Rptr. 3d at 619).

We find the California courts' reasoning to be persuasive, and we adopt their position, with the exception that Nevada courts are not limited to the lodestar amount for determining reasonable fees. Therefore, Nevada courts "may begin with any method rationally designed to calculate a reasonable amount, including those based on a 'lodestar' amount or a contingency fee." *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 864, 124 P.3d 530, 549 (2005) (holding that Nevada courts are "not limited to one specific approach" in determining reasonable fee amounts). Because this framework was not considered below, given that the district court

granted the anti-SLAPP motion in full, we remand for the parties and the district court to address the attorney fees award in light of the Lloyds' now partial success on the anti-SLAPP motion and the factors outlined in *Malin*.[5]

## *CONCLUSION*

Where the claims in a cause of action are based on multiple alleged communications, a court must review each of those communications independently under the anti-SLAPP analysis. Thus, a court should grant the anti-SLAPP special motion to dismiss only as to the factual bases on which the defendant meets their burden under the first prong and the plaintiff fails to meet their burden under the second prong. Therefore, it is appropriate for a court to grant an anti-SLAPP motion in part and narrow the factual bases on which a claim may proceed if it is based, in part, on unprotected communications. Additionally, where a moving party partially prevails on their anti-SLAPP motion, the district court must analyze the factors outlined in *Malin*, 159 Cal. Rptr. 3d at 309, to determine the extent to which attorney fees are warranted.

Here, the district court erred in granting the anti-SLAPP motion in its entirety. In particular, the Lloyds failed to meet their burden under the first prong of the anti-SLAPP analysis as to four statements— those include the Lloyds' statements (1) that Eric and Leida used a "Go Fund Me account for their own personal interests," (2) that Eric called William the "N-word," (3) that Leida "killed three [ ] people in Indonesia," and (4) that "[Leida] enjoys killing people." The district court thus erred in granting the motion as to those statements. The district court, however,

---

[5]Given this remand, we do not address the merits of the pro-hac-vice-counsel attorney fee issue.

reached the correct result as to the remaining statements because the Lloyds met their burden under the first prong and the Rosenbrooks failed to meet their burden under the second prong.

Accordingly, in Docket No. 84452, we affirm in part and reverse in part the district court's order granting the anti-SLAPP motion and remand for the district court to narrow the defamation and conspiracy claims to the unprotected communications—those on which we conclude that the Lloyds failed to meet their burden under the first prong. Additionally, because the Lloyds should have only partially prevailed on their motion, in Docket No. 85175 we reverse the order awarding attorney fees and remand for the district court to reconsider the award consistent with this opinion.

_____, J.
Parraguirre

We concur:

_____, J.
Bell

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A